RIVERSIDE PARK REALTY COMPANY, William J. Wilson, Jr. and Tommy G. Wilson

v.

FEDERAL DEPOSIT INSURANCE CORPORATION and Ann Yeager Young.

No. 78–3232–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Dec. 7, 1978.

Frank C. Ingraham, Ingraham, Young & Corbett, I. C. Waddey, Jr., Hooker & Waddey, Nashville, Tenn., for plaintiffs.

Gerard Thomas Nebel, Robert J. Walker, Bass, Berry & Sims, Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

## I. INTRODUCTION

Plaintiff Riverside Park Realty Company (hereinafter referred to as Riverside) and its owners, William J. Wilson, Jr., and Tommy G. Wilson, filed this suit in the Chancery Court for Williamson County, Tennessee, to enjoin defendant Federal Deposit Insurance Corporation (hereinafter referred to as the FDIC) from foreclosing under a deed of trust on real property (Countrywood) owned by Riverside. A temporary restraining order enjoining the foreclosure issued by the state court was continued by this Court after the matter was removed here by the FDIC pursuant to 12 U.S.C. § 1819(4).[1] The temporary restraining order has since expired, but defendants have voluntarily refrained from foreclosing pending the Court's decision on plaintiffs' application for a preliminary injunction, which application is the subject of this memorandum opinion.

The background of this litigation is fairly complex. In November 1973, Riverside and Hamilton Mortgage Company (HMC) entered into a loan agreement whereby HMC agreed to loan Riverside $3,500,000 for the development of a subdivision on the Countrywood property. A deed of trust note and a deed of trust for the Countrywood property were executed in connection with the loan. The note contained a provision for interest at the rate of ten (10%) percent per annum calculated on a 360-day basis. It also contained the promises of HMC to fund draw requests submitted by Riverside and to release lots from the lien of the deed of trust upon tender of certain sums by Riverside. Hamilton National Bank (the Bank) then entered the picture by joining HMC in a participation agreement that provided that the Bank would advance most of the funds required by the loan in exchange for an interest in the loan. From the beginning, the project was beset by difficulties, some caused by HMC's sluggishness in funding draw requests, and some by third parties. As a result, plaintiffs decided to scale down the size of the development and renegotiated the loan in September 1975 so that the total loan commitment was reduced to $2,200,000. In a provision of the

---

1. 12 U.S.C. § 1819(4) provides in pertinent part:
 All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may . . . remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect . . . .
 Jurisdiction in this Court is based upon this statute combined with the "procedure for removal" provided by 28 U.S.C. § 1441(b).

amended loan agreement, plaintiffs ratified all prior acts of the lenders and waived all claims arising from the lenders' prior breaches of the contract. Problems remained, however, as HMC continued to be slow in funding Riverside's draw requests and in furnishing certain lot and common area releases. In November 1975, the situation of the parties worsened. Riverside refused to make a $100,000 payment due at that time, contending that the release of lots and common areas by HMC was a condition precedent to the payment. HMC, on the other hand, believed that Riverside's performance was due prior to HMC's. Draw requests were funded until February 1976, when the total amount advanced was just $233,696 short of the $2,200,000 commitment, but then HMC refused to make any more outlays until the $100,000 payment was received from Riverside. HMC did send a release of common areas to Riverside on February 13. On February 16, 1976, the comptroller of the currency declared the Bank insolvent and appointed the FDIC as receiver. Shortly thereafter, HMC filed a petition in bankruptcy court. The FDIC, in its separate corporate capacity as liquidator, acquired a 100% interest in the note and deed of trust by assignments from the FDIC as receiver of the Bank and the trustee in bankruptcy for HMC. In spite of all these adversities, Riverside desired to complete the project and attempted to negotiate a settlement with the FDIC by offering to pay the overdue $100,000 in return for a release of lots and the FDIC's commitment to fund the remainder of the loan. The FDIC rejected the offer. Subsequently, the foreclosure proceeding that is the subject of this lawsuit was initiated by the FDIC.

Plaintiffs advance two theories in support of their contention that they are entitled to permanent injunctive relief against the threatened foreclosure: (1) that the note secured by the deed of trust is usurious, and therefore the note and deed of trust are unenforceable; and (2) that the plaintiffs have a claim for damages arising from the lender's breach of contract that equals or exceeds the amount of plaintiffs' debt. The issue now before the Court is whether or not a preliminary injunction should be issued to enjoin the FDIC from proceeding with the foreclosure until after a full trial on the merits of plaintiffs' claim. Plaintiffs contend that a preliminary injunction should be granted because if it is not, and the foreclosure sale occurs, their right to a permanent injunction after trial on the merits would be rendered worthless. As a secondary ground, plaintiffs argue that even if they are not entitled to a permanent injunction, either because the note is enforceable in spite of the alleged usury or because their damages from the alleged breach of contract do not equal or exceed the amount of the indebtedness, a preliminary injunction should be granted in order to protect their ability to recover such damages as they may be able to establish at trial. In this situation, a preliminary injunction is said to be necessary because plaintiffs' claim for damages can be asserted only by way of setoff or counterclaim against the FDIC, the assignee of the note and deed of trust, and if the FDIC is allowed to proceed with foreclosure, it may never sue plaintiffs for any portion of the indebtedness. This would prevent plaintiffs from making their claim for damages by setoff or counterclaim and cause them to suffer irreparable harm.

## II. APPLICABLE LAW

Because the FDIC is a party to this action, and jurisdiction is based upon 12 U.S.C. § 1819(4) rather than diversity of citizenship, the Court must first address the question of what law to apply in determining whether or not plaintiffs have satisfied the standards for a preliminary injunction. The point appears to be settled beyond peradventure that federal law governs in cases involving the rights of the FDIC. *See, e. g., D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Federal Deposit Insurance Corp. v. Meo,* 505 F.2d 790 n.4 (9th Cir. 1974). *See generally Federal Deposit Insurance Corp. v. Ashley,* 585 F.2d 157 n.7 (6th Cir. 1978). In the *D'Oench,*

*Duhme* case, the United States Supreme Court indicated that in cases such as the instant one, in which the liability of a debtor on a note acquired by the FDIC is at issue, the rights and duties of the parties are matters of federal, not state law. Mr. Justice Jackson, concurring in *D'Oench, Duhme,* explored the point thoroughly and advanced the following analysis:

> This case is not entertained by the Federal courts because of diversity of citizenship. It is here because a Federal agency brings the action, and the law of its being provides . . . that: "All [civil] suits . . . to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States . . . ." That this provision is not merely jurisdictional is suggested by the presence in the same section of the Act of the separate provision that the [FDIC] may sue and be sued "in any court of law or equity, state or Federal."

> . . . . .

> A Federal court sitting in a nondiversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but *in the last analysis its decision turns upon the law of the United States, not that of any state.*

315 U.S. at 467–68, 471–72, 62 S.Ct. at 684, 686, 86 L.Ed. at 967, 969 (emphasis added).

■ Determining that federal law applies solves only half the problem, however. Because no federal statute establishes a rule of decision in this case,[2] the Court must turn to federal common law. When federal common law applies, federal courts are free to use the "traditional common-law technique of decision and to draw upon all the sources of the common law . . . ." *D'Oench, Duhme,* 315 U.S. at 472, 62 S.Ct. at 686, 86 L.Ed. at 970 (Jackson, J., concurring). One such source is, of course, state law. For several reasons, the Court believes that in the instant case reference to

Tennessee law is logical, essentially fair, and particularly appropriate, especially with regard to the substantive usury and breach of contract issues. First, the "source or nature of the right sued upon," a contract involving Tennessee real estate and intended to be performed entirely in Tennessee, appears to be a matter in which state law has the most substantial interest. *See, e. g., In re Anjopa Paper & Board Manufacturing Co.,* 269 F.Supp. 241, 253 (S.D.N.Y. 1967). *See also Watson v. McCabe,* 527 F.2d 286 (6th Cir. 1975), *rehearing denied, id.* (1976). Second, since both the note and the loan agreement provided that the transaction would be governed by and construed in accordance with Tennessee law, neither party will be unfairly surprised by the application of Tennessee law. Finally, as was recognized in the *D'Oench, Duhme* case, "[m]any questions as to the liability of parties to commercial paper which comes into the hands of the [FDIC] will best be solved by applying the local law with reference to which the makers and the insured bank presumably contracted." 315 U.S. at 474, 62 S.Ct. at 687, 86 L.Ed. at 971 (Jackson, J., concurring). In light of these factors, the Court concludes that Tennessee law should be adopted as the federal common law that controls the decision on the substantive usury and breach of contract issues in this case.

## III. STANDARD FOR PRELIMINARY INJUNCTIONS

■ A preliminary injunction may be issued to protect plaintiffs from irreparable harm and to preserve the Court's ability to effectuate its decision after a trial on the merits. The grant or denial of a preliminary injunction is within the Court's discretion, and the exercise of that discretion is the essence of its equitable powers. *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir. 1978); *Dasco, Inc. v. American City Bank & Trust Co.,* 429 F.Supp. 767, 769 (D.Nev.1977). The Court must, however, exercise its discretion in accordance with

---

2. Defendants argue, to the contrary, that a federal statute, 12 U.S.C. § 1823(e), is controlling on the issue of whether or not plaintiffs can assert a breach of contract against the FDIC. This contention is discussed in Section III A 2 of this Memorandum, *infra.*

the standards for this kind of extraordinary relief. The four prerequisites of a preliminary injunction in federal court are a substantial likelihood that the plaintiff will prevail on the merits, a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted, a showing that the threatened injury to the plaintiff is greater than the injury that would be inflicted on the defendant by grant of an injunction, and a showing that the injunction will not disserve the public interest. *Roth, supra; Wright & Miller, Federal Practice and Procedure: Civil* § 2948. As it appears that the public interest is not particularly implicated in this case, and that the potential injury to the defendant caused by the grant of an injunction would not be greater than that to the plaintiffs caused by denial of an injunction, the Court believes that those two prerequisites have been satisfied and will focus its inquiry on the "likelihood of success on the merits" and "irreparable injury" issues in order to reach its conclusion.

### A. Substantial Likelihood of Success on the Merits

■ In order to establish a substantial likelihood of success on the merits, plaintiffs need only raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Roth, supra,* at 537 (6th Cir. 1978); *Brandeis Machinery & Supply Corp. v. Barber-Greene Co.,* 503 F.2d 503, 505 (6th Cir. 1974); *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953). Plaintiffs are not required to establish their right to relief "wholly without doubt," *Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 924 (6th Cir. 1978); *Hamilton Watch Co., supra;* and this Court is required only to "satisfy itself, not that the plaintiff certainly has a right, but that he has a fair question to raise as to the existence of such a right." *Brandeis Machinery & Supply Corp., supra; American Federation of Musicians v. Stein,* 213 F.2d 679, 683 (6th Cir.), *cert. denied,* 348 U.S. 873, 76 S.Ct. 108, 99 L.Ed. 687 (1954). These principles and authorities strongly indicate that the standard that must be met in order to establish the requisite likelihood of success on the merits is not a particularly stringent one.

The issue before the Court at this point, then, is whether plaintiffs have raised serious and substantial questions that are fair grounds for litigation concerning their claims that the note is usurious, that the note is unenforceable, that the loan agreement was breached by defendants' assignors, and that as a result of the breach plaintiffs have a claim for damages in an amount equal to or greater than the outstanding indebtedness. If plaintiffs have satisfied this standard concerning their argument that the note is usurious and unenforceable, then it is likely that plaintiffs will be entitled to a permanent injunction after trial on the merits. *See, e. g., Rush v. Chattanooga DuPont Employees' Credit Union,* 210 Tenn. 344, 358 S.W.2d 333 (1962); 45 *Am.Jur.2d Interest and Usury* § 271. Therefore, the Court, in order to preserve its ability to provide permanent injunctive relief, would be .compelled to grant a preliminary injunction. Likewise, if plaintiffs have satisfied the standard with regard to their argument that their alleged claim for damages equals or exceeds the amount of the indebtedness, then it is likely that plaintiffs will be entitled to a permanent injunction. *Joest v. John A. Denie's Sons Co.,* 174 Tenn. 410, 126 S.W.2d 312 (1939). In that event, the Court would also find it necessary to issue a preliminary injunction.

### 1. Usury

In contending that the note is usurious, plaintiffs have raised serious and substantial questions. Under Tennessee law, "contracts may be made in writing for the payment of a rate of interest not greater than ten (10%) percent per annum payable on the unpaid principal. Every excess over [this rate] is usury . . . ." T.C.A. § 47–14–104. The note involved in this case provided that interest would be charged at the rate of ten percent per annum calculated on a 360-day basis. This rate appears to result

in interest greater than the maximum allowed by statute. *Cumberland Capital Corp. v. Patty,* 556 S.W.2d 516, 532 (Tenn. 1977); *Dowler v. Georgia Enterprises, Inc.,* 162 Tenn. 59, 34 S.W.2d 445 (1931). Plaintiffs also alleged that they were charged a commitment fee of $52,500, the purpose of which was to increase the yield or interest on the loan. If this allegation is true, the fee would seem also to constitute a usurious charge. *See, e. g., Aztec Properties, Inc. v. Union Planters National Bank,* 530 S.W.2d 756 (Tenn.1975). Thus, at the very least, plaintiffs have raised questions that are fair grounds for litigation on the usury issue.

Even though plaintiffs may prevail on their contention that the note is usurious, however, they have not raised serious and substantial questions concerning their right to have the note and attendant documents declared void and unenforceable. Tennessee law is quite well settled on this point and does not favor plaintiffs' position. The rule was clearly stated in a very early opinion of the Tennessee Supreme Court:

> If a [lender] sue upon a contract usurious upon its face, and in stating his case the usury is made to appear, this court has held that he cannot recover even the sum actually advanced. *Isler v. Brunson,* 6 Humph. 277. The reason is that his contract is illegal, . . . and he is repelled upon the well-settled principle that the courts will not lend their aid for the enforcement of a contract which is in violation of the law of the land. But *when the usury is made to appear by plea of the [borrower] only, the contract is held to be good for the sum due, and interest.* . . . *[W]henever the party to whom money is advanced upon an usurious contract is the actor, and discloses the usury, he can only avoid the excess over the legal interest.*

*Causey v. Yates,* 27 Tenn. (8 Humph.) 605 (1848) (emphasis added). Numerous subsequent cases either quote this language or play a variation on its theme. *See, e. g., Bang v. Phelps & Bigelow Windmill Co.,* 96 Tenn. 361, 34 S.W. 516 (1896); *Ottenheimer v. Cook,* 57 Tenn. (10 Heisk.) 309 (1872); *Sporrer v. Eifler,* 48 Tenn. (1 Heisk.) 633 (1870). In compliance with this rule, many cases indicate that when an instrument is usurious on its face, and the lender brings an action to enforce it, the instrument will be held to be unenforceable. *See, e. g., Rush v. Chattanooga DuPont Employees' Credit Union,* 210 Tenn. 344, 358 S.W.2d 333 (1962); *Wallace v. Goodlet,* 93 Tenn. 598, 30 S.W. 27 (1894); *Lyons v. Jones,* 22 Tenn. App. 262, 121 S.W.2d 125 (1938); *Brannan v. Davis,* 5 Tenn.App. 72 (1927). When, however, as in the present case, the debtor brings an action to have the note declared unenforceable on the ground of usury, he will not be successful; although he does not have to pay usurious interest, he remains liable on the note for the principal and interest calculated at the legal rate. *See, e. g., Sporrer v. Eifler, supra; Causey v. Yates, supra.* This latter rule applies even when the usury appears on the face of the instrument. *Bang v. Phelps & Bigelow Windmill Co., supra,* 34 S.W. at 517. Since a deed of trust securing a note is enforceable to the same extent that the debt itself is valid and enforceable, *Lyons v. Jones, supra,* in the case when the borrower has instituted the action, the lender can still foreclose upon the collateral to recover the nonusurious portion of the debt. Thus plaintiffs cannot possibly prevail on their claims that the note and deed of trust are unenforceable, and they have certainly not raised questions on these issues that are fair grounds for litigation. Necessarily the conclusion follows that plaintiffs are not entitled to enjoin foreclosure on these grounds.[3]

**3.** One rather inartfully worded Tennessee opinion casts doubt upon the certainty of Tennessee law on this issue. In *White v. Kaminsky,* 196 Tenn. 180, 264 S.W.2d 813 (1954), the Tennessee Supreme Court, without citation of authority, announced in dictum:

> The rule is stated that where the usury appears upon the face of the instrument, the obligation is unenforceable but where the excessive interest does not appear upon the face of the instrument, this excess is to be deducted and the principal sum advanced enforced.

264 S.W.2d at 815. This statement is absolutely correct only in situations in which the *lender* initiates the action to enforce the usurious in-

Plaintiffs, of course, have a right to avoid paying the usurious interest. The exact amount of the usury is unknown at this point, but it will most probably be very small in comparison to the size of the indebtedness.[4] The Court is convinced that plaintiffs' rights in this respect can be adequately protected even without a preliminary injunction.[5] *But cf. Pante v. Bethel, Wheatley & Lonsdale,* 56 Tenn. (9 Heisk.) 666 (1872) (lower court erred in permitting foreclosure of mortgage before real amount secured thereby was ascertained).

Since the Court believes that the rule of *Causey v. Yates* provides sufficient support for its decision on this aspect of the case, it is unnecessary to determine the merits of defendants' argument that even if the note is unenforceable, defendants have the right to abandon the note and recover on the original consideration.

### 2. Breach of Contract

Plaintiffs allege that defendants' assignors, HMC and the Bank, breached the loan agreement with plaintiffs in two ways: first, by failing to release common areas, and second by failing to fund certain of plaintiffs' draw requests. Defendants contest these allegations and contend that in fact plaintiffs themselves breached the agreement, but for purposes of the Court's determination of plaintiffs' application for a preliminary injunction and with the *Roth*

standard for evaluating a showing of likelihood of success on the merits in mind, the FDIC has conceded that plaintiffs have raised serious questions concerning the allegations. The Court therefore so holds.

Nevertheless, defendants argue that plaintiffs, as a matter of federal law, cannot assert a breach of the loan agreement against the FDIC. Defendants rely upon 12 U.S.C. § 1823(e), which provides in pertinent part as follows:

No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) ·shall have been, continuously, from the time of its execution, an official record of the bank.

According to defendants this statute is applicable in the instant case because plaintiffs are attempting to assert a breach of the *loan agreement* to diminish the FDIC's right to foreclosure under the *deed of trust,*

strument, as noted in the textual discussion preceding this footnote. The *White* opinion, however, does not disclose the crucial fact of whether the maker or holder of the note had brought the suit. From the syllabus of the case, published in both the official and West reporters, it appears that the lender had instituted the proceeding for foreclosure of a trust deed securing a note. The record of the case on file in the Tennessee State Library and Archives reveals that the opposite was actually true and that the *borrower* had brought suit to set aside an already completed foreclosure sale. According to most of the cases, when the borrower institutes the court proceeding, the instrument remains enforceable to the extent of the principal and legal interest regardless of whether or not the instrument is usurious on its face. The version of the rule stated in *White* is clearly inconsistent with this because it treats the case in which the borrower brings

suit the same as that in which the lender brings suit.

Fortunately, the *White* case was decided upon the ground that the note was not usurious on its face and was thus enforceable. Therefore, this Court construes the first half of the above-quoted declaration as dictum, finds that it is not a correct statement of Tennessee law, and believes that it was not intended to overrule the numerous cases that hold the contrary.

**4.** Plaintiffs' expert's highest estimate of the usury charged was approximately $17,000. If the alleged usurious $52,500 commitment fee is included, the total amount of the usury would be $69,500. In contrast, the total amount of the debt exceeds $2,200,000.

**5.** This protection will be afforded by the order that the Court proposes in Section III B of this Memorandum.

an asset acquired by the FDIC under § 1823. Defendants contend that pursuant to this statute, plaintiffs cannot assert a breach of the loan agreement against the FDIC unless the agreement satisfies each of the four elements set out in § 1823(e), and that the agreement does not pass muster under this provision since it was executed by HMC and Riverside and not by the Bank.

 The Court cannot agree with defendants' argument that § 1823(e) applies in this case, because no such "agreement" as § 1823(e) was intended to cover is involved here.[6] When the enforcement of a separate collateral or secret agreement would alter the terms of an asset acquired by the FDIC so that the FDIC's right, title, or interest in the asset would be defeated or diminished, § 1823(e) comes into play. *See, e. g., Federal Deposit Insurance Corp. v. Vogel,* 437 F.Supp. 660 (E.D.Wis.1977); *Dasco, Inc. v. American City Bank & Trust Co.,* 429 F.Supp. 767 (D.Nev.1977). The statute was enacted to effectuate a federal public policy to protect the funds of depositors in federally insured banks. "It operates to insure that the FDIC, when it expends moneys entrusted to it to purchase assets of a closed insured bank, can rely on the bank's records and will not be risking an impairment of the assets through an agreement not contained in the bank's records." *Federal Deposit Insurance Corp. v. Vogel, supra,* 437 F.Supp. at 663. Congress undoubtedly intended to cloak the FDIC with a significant amount of protection by promulgating § 1823(e), and accordingly the courts have repelled attempts of obligors on notes acquired by the FDIC who seek to prevent enforcement of the obligations by asserting separate, secret, unrecorded agreements. For example, in *Federal Deposit Insurance Corp. v. Vogel, supra,* the court held that in a suit by the FDIC against the guarantors of a letter of credit, the guarantors could not assert that their guaranties were given for the oral promise of the closed bank to loan the guarantors $2,000,000, which the bank failed to do; and in *Dasco, Inc., supra,* the court decided that the makers could not defeat the rights of the FDIC in a note by claiming the existence of an oral agreement between the parties that made the maker's liability on the note conditional.

When, however, the asset upon which the FDIC is attempting to recover is *the very same agreement* that the makers allege has been breached by the FDIC's assignors, § 1823(e) does not apply. None of the policies that favor the invocation of this statute are present in such cases because the terms of the agreement that tend to diminish the rights of the FDIC appear in writing on the face of the agreement that the FDIC seeks to enforce.

Defendants' attempt to characterize the agreement that plaintiffs claim has been breached as a separate and unrecorded agreement is totally unpersuasive. The deed of trust under which the FDIC now seeks to foreclose incorporates by reference "as if fully set forth" the terms of the loan agreement that plaintiffs allege were breached. Furthermore, the deed of trust note, which in essence is what the FDIC seeks to enforce through foreclosure, contains these very terms. Therefore, since plaintiffs are not asserting a separate agreement to defeat the rights of the FDIC, defendants' argument that § 1823(e) applies must fail.[7]

6. Since the Court is deciding this issue on the ground that plaintiffs are not asserting a separate, secret, or unrecorded agreement to defeat or diminish the rights of the FDIC and that therefore § 1823(e) is not applicable, it makes no comment on the question of whether or not § 1823(e) can ever apply to a transaction to which the closed bank was not originally a party.

7. The Court is also unpersuaded by defendants' contention that, as a matter of federal law, any claim by plaintiffs for breach of contract must be asserted against the FDIC in its capacity as receiver and not against the FDIC in its separate corporate capacity as liquidator. It is true that the courts have recognized that the FDIC operates in such a dual capacity. *See, e. g., Federal Deposit Insurance Corp. v. Design & Development, Inc.,* 73 F.R.D. 442 (E.D.Wis. 1977). It is also true that a single federal district court has held that any action arising out of the breach of contract by a closed bank must be alleged against the bank's receiver and

■ Even though plaintiffs are not barred by federal statute from asserting a breach against defendants and may ultimately prevail on their contention that HMC and the Bank did breach the contract, however, they have not raised serious and substantial questions concerning their right to recover damages for the breach that equal or exceed the amount of the indebtedness. This is not to say, of course, that plaintiffs cannot possibly prevail on their claim that they are entitled to recover some damages for the alleged breach, but merely that in light of the proof offered thus far it appears that in no event will damages be so great as to cancel the total debt.

The Court does not reach this conclusion on the ground, argued by defendants, that a claim of setoff cannot be predicated upon unliquidated damages such as those that plaintiffs here attempt to establish. Although the parties have designated plaintiffs' claim as a "setoff," the Court believes that technically the claim is one of "recoupment," for which liquidated damages are not required. *American Training Services v. Commerce Union Bank*, 415 F.Supp. 1101, 1104 (M.D.Tenn.1976) (construing Tennessee law); *Mack v. Hugger Bros. Construction Co.*, 153 Tenn. 260, 283 S.W. 448 (1926); *Fischer Lime & Cement Co. v. Suzore*, 11 Tenn.App. 588 (1930); *Voncannon & Co. v. Burleson and Laws*, 6 Tenn.App. 369 (1927); *Sobieski, Counterclaims and Statutes of Limitations; a Critical Commentary on Present Tennessee Law*, 42 *Tenn.L.Rev.* 291, 297 (1975). Certainly plaintiffs' claim for damages for breach of the very contract that defendants now attempt to enforce by way of foreclosure is a claim that has "sprung immediately from [defendants'] claim" and relates "to cross-demands inseparably connected with and arising out of the transaction on which [defendants' attempt to foreclose] is grounded." *American Training Services, supra; Mack, supra,* 283 S.W. at 449–50. Thus, the requirement that when a party makes a claim for recoupment the claims of both plaintiffs and defendants must arise from the same transaction has been satisfied.

In spite of this ruling, the Court believes that for two reasons, each in itself a sufficient ground upon which to rest the decision on this issue, plaintiffs are not likely to succeed on their claim that their damages equal or exceed the amount of the indebtedness. First, the vast majority of the alleged damages consist of lost profits, which in this case are too speculative to be recoverable. At the hearing, all of the witnesses, including plaintiff William J. Wilson, Jr., testified that the profitability of the Countrywood venture was purely a matter of conjecture and surmise. The present cost of completing the project and of preparing the lots for sale can only be estimated. Numerous uncertainties would have to be glossed over in calculating damages. Because of the speculative nature of this claim, the Court does not believe that plaintiffs can succeed on this issue at trial.

Secondly, plaintiffs failed to take the necessary steps to avoid the consequences of the alleged breach. The general and well-settled rule is that in an action for breach of contract, the injured party is under a duty to use all proper means and efforts to mitigate his damage. *Farabee-Treadwell Co. v. Union & Planters' Bank & Trust Co.*, 135 Tenn. 208, 186 S.W. 92 (1916); *Anderson-Gregory Co., Inc. v. Lea*, 51 Tenn.App. 612, 370 S.W.2d 934 (1963). As HMC did release the common areas shortly before the Bank was declared insolvent, most of any damage that plaintiffs have suffered must

not against the FDIC in its separate corporate capacity. *Federal Deposit Insurance Corp. v. Vogel*, 437 F.Supp. 660, 665 (E.D.Wis.1977) (citing no authority to support such a proposition). But in that case, the court was faced with an attempt by the obligors to assert the breach of an oral agreement in order to thwart the FDIC's right to enforce their obligations with regard to a separate written agreement. Here plaintiffs are attempting to assert the breach of the very same agreement that defendants seek to enforce through foreclosure. In such a case, it is hard to imagine how the FDIC can argue that such a claim cannot be maintained against it and in the same breath assert its right to enforce through foreclosure the very same instruments. *See Federal Deposit Insurance Corp. v. Design & Development, Inc., supra,* 73 F.R.D. at 444.

be deemed to have arisen as a result of the failure of HMC to advance the remaining $200,000 of the loan commitment. The rule requiring an injured party to prevent avoidable consequences of a breach is especially applicable with regard to breaches of contracts to lend money. *Restatement of Contracts*, § 343. Damage in such cases is thought to be easily avoidable because the injured party can usually procure the money from other lenders. *Restatement, supra,* comment a; 22 *Am.Jur.2d Damages* § 68. Plaintiffs here exerted no efforts to obtain the $200,000 from other sources so that it could complete the Countrywood project. Their claim that they were unable to borrow the money elsewhere is unconvincing in light of their then-estimated net worth of several million dollars and the fact that they did not even submit applications to any lenders for this purpose. Most of any damages resulting from the alleged breach of the contract must therefore be attributed to plaintiffs' own inertia, and so the Court does not believe that plaintiffs are likely to succeed on the merits of their claim that their damages equal or exceed the indebtedness.

Plaintiffs may yet prove that they are entitled to recover some damages and assert this claim to diminish defendants' claim for the amount owed under the loan. The Court is of the opinion that whatever rights plaintiffs may have in this respect can be adequately protected without a preliminary injunction.[8]

### B. *Irreparable Injury*

Even though plaintiffs have not demonstrated a likelihood of success on the merits concerning their right to have permanent injunctive relief against the foreclosure and therefore cannot base their request for a preliminary injunction on that ground, since there is a likelihood, under the *Roth* standard, that plaintiffs will be entitled to some recovery against defendants, the Court must consider whether or not there is some other ground on which a preliminary injunction should be granted. Plaintiffs

claim that a preliminary injunction is necessary for two reasons. First, they contend that once foreclosure occurs, their claims for damages may become worthless and unenforceable against defendants, thereby causing them irreparable harm. Second, they assert that foreclosure will cause them to suffer irreparable harm to their reputations, credit ratings, and standing in the community.

The most prominent reason for granting a preliminary injunction is that without such judicial intervention into the affairs of the parties prior to a full trial on the merits of the case, the applicant for such relief is likely to suffer irreparable injury. Indeed the prevention of harm of such kind or magnitude as cannot be adequately redressed through legal remedies is the very *raison d'etre* for the extraordinary equitable remedy of injunction. Therefore, "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Wright & Miller, Federal Practice and Procedure*: Civil § 2948.

The Court finds that there is no merit in the individual plaintiffs' claim that they will suffer irreparable injury to their reputations, credit ratings, and standing in the community if this Court permits foreclosure. While injury to reputation has been held to be "irreparable" because it is not adequately compensable by a damage award, *Coca-Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183, 1189 (E.D.N.Y.1972); *Robert W. Stark, Jr., Inc. v. New York Stock Exchange, Inc.,* 346 F.Supp. 217, 232 (S.D.N.Y.), *aff'd,* 466 F.2d 743 (2d Cir. 1972); *Cutler Hammer, Inc. v. Universal Relay Corp.,* 285 F.Supp. 636, 639 (S.D.N.Y. 1968), no such injury is present or threatened in this case. Even if foreclosure would adversely affect the reputation of an average land developer of good standing, foreclosure will not have that effect on these plaintiffs' reputations. The proof shows that both individual plaintiffs were involved in a similar foreclosure in June

---

8. See the order proposed in Section III B of this Memorandum.

1978. Furthermore, plaintiffs were closely associated with another corporation, GTS, Incorporated, that went into bankruptcy, and they have been previously sued for nonpayment of debt. Any damage to their reputations resulting from a foreclosure on the Riverside property would therefore be cumulative only. Additionally, the proof also indicates that land developers often survive foreclosures and continue in the development business. Thus, the Court concludes that no injury to plaintiffs' reputations will result if a preliminary injunction against foreclosure is not granted, and therefore this argument offers no basis for a finding that plaintiffs will be irreparably harmed if the foreclosure is not enjoined.

■ On the other hand, plaintiffs have carried their burden of establishing a threat of injury that can be considered "irreparable" with regard to their other claim. Plaintiffs' claim arising from usury and breach of contract are, of course, of the type that are normally adequately remediable by an award of damages and not the type for which injunctive relief is usually available, *Wright & Miller* § 2948, but this point is complicated somewhat by the status of the FDIC as assignee of the note and deed of trust. Although plaintiffs may assert against the assignee all defenses and counterclaims to which the now defunct assignors would have been subject, they may only assert these claims defensively to diminish the assignee's recovery on the debt and cannot assert them as a separate cause of action against the assignee. *First Acceptance Corp. v. Kennedy*, 95 F.Supp. 861, 872 (N.D.Iowa 1951); *Marley v. United States*, 423 F.2d 324, 191 Ct.Cl. 205 (1970); 80 *C.J.S. Setoff and Counterclaim* § 61(e) (1953). Plaintiffs fear that since foreclosure under a deed of trust is by extrajudicial exercise of a power of sale rather than by decree following proceedings in court, defendants may have no need or desire to collect any part of this debt through litiga-

tion, and plaintiffs will thereby lose their opportunity to assert their claims for damages by way of setoff or counterclaim. Plaintiffs are understandably apprehensive, as it appears that their claims will be rendered essentially worthless if this occurs.

The Court believes, however, that plaintiffs' rights can be preserved without a grant of a preliminary injunction. To this end, the Court will order defendants to pay into the registry of the Court all proceeds received from sale of the property should they foreclose prior to a final adjudication in this cause, so that plaintiffs may setoff the amount of damages from breach of contract and the amount of the usurious interest that they may establish at trial.[9] Such an order will provide sufficient protection to plaintiffs and will prevent the Court's ability to award final relief from being impaired. In the exercise of its equitable jurisdiction, which is properly invoked by the presence of a threat of irreparable injury, the Court has power to issue such an order because "[t]he essence of equity jurisdiction has been the power . . . to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *e. g., Bowles v. Skaggs*, 151 F.2d 817 (6th Cir. 1945).

## IV. SUMMARY

To recapitulate, plaintiffs have failed to persuade the Court that they are entitled to a preliminary injunction preventing defendants from foreclosing under a deed of trust on the Countrywood property. Had plaintiffs proven that there was a substantial likelihood that they would be entitled to a permanent injunction after a trial on the merits, either because the note and deed of trust are unenforceable on the ground of usury or because plaintiffs' claim for damages equals or exceeds the amount of the indebtedness, the Court would have been

---

9. Should a foreclosure sale not satisfy the debt in full, plaintiffs' right of setoff will be subject to whatever claims for the deficiency that defendants may be able to assert. Furthermore, should the FDIC purchase the property at a foreclosure sale, they will be required either to hold the property pending final resolution of this case, or pay into court whatever amounts they receive from a sale of the property to third parties.

inclined to issue a preliminary injunction. Furthermore, had plaintiffs established that the Court's refusal to grant a preliminary injunction would cause them irreparable injury either by nullifying their ability to recover damages from defendants, who are immune to such claims except if asserted as a setoff or counterclaim, or by damaging their reputations, the Court would undoubtedly have determined that interlocutory relief preventing foreclosure was warranted. The proof shows, however, that with only one exception plaintiffs' claims are not meritorious. With regard to their assertion that they need the aegis of this Court to protect their ability to recover whatever damages they may ultimately be able to prove, the Court believes that plaintiffs have a legitimate fear. It is the judgment of this Court, however, that the order proposed in Section III B of this Memorandum will afford sufficient protection without the issuance of a preliminary injunction against foreclosure.