909 F.2d 306
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate
capacity, Appellee,
v.
VIRGINIA CROSSINGS PARTNERSHIP, a Minnesota general
partnership, Leo W. Lund and David Stewart, Appellants.
 No. 89-5463MN.
 United States Court of Appeals,
Eighth Circuit.
 Argued June 15, 1990.
Decided July 18, 1990.
 
 Christopher A. Elliott, St. Paul, Minn. (Gary F. Albrecht, and Christoffel & Elliott, P.A., St. Paul, Minn., on the brief), for appellants Virginia Crossings Partnership, et al.
 John Paul Martin, Minneapolis, Minn. (Peterson, Tews & Squires, Minneapolis, Minn., John Douglas, Mark Rosen, Ann S. DuRoss and Jaclyn C. Taner, Washington, D.C., on the brief), for appellee Federal Deposit Ins. Corp.
 Before LAY, Chief Judge, JOHN R. GIBSON and TIMBERS,* Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellants in this action are Virginia Crossings Partnership ("Virginia Crossings" or "Partnership"), a general partnership, and Leo W. Lund and David Stewart, the general partners. Appellee is the Federal Deposit Insurance Corporation ("FDIC"), in its corporate capacity as the purchaser of certain assets of the Guaranty State Bank of St. Paul, Minnesota ("Bank").
 
 
 2
 Appellants appeal from a summary judgment entered July 5, 1989, in the District of Minnesota, Robert G. Renner, District Judge, in favor of the FDIC. The FDIC commenced this action to collect on two promissory notes executed by Virginia Crossings in favor of the Bank and guaranteed by the general partners, Lund and Stewart. Appellants interposed various defenses, including fraud on the part of the Bank and termination of the guarantees. The district court held that these defenses were barred by 12 U.S.C. Sec. 1823(e) (1988), which protects the FDIC from agreements tending to defeat or diminish its interest in assets held in its corporate capacity.
 
 
 3
 On appeal, appellants assert that, since there are genuine issues of material fact, summary judgment was improper. Specifically, they contend that (1) the documents that they offered to confirm the terms of the loan agreement satisfy the requirements of Sec. 1823(e); (2) the district court abused its discretion in refusing to permit additional discovery regarding minutes of meetings of the Bank's board of directors; and (3) their defenses of fraud and termination of the guarantees fall outside the ambit of Sec. 1823(e).
 
 
 4
 For the reasons which follow, we affirm the judgment of the district court.
 
 I.
 
 5
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. Since this is an appeal from a summary judgment in favor of the FDIC, we review the facts in the light most favorable to appellants.
 
 
 6
 This action arises from a rental housing project in St. Paul, for which the Guaranty State Bank provided construction financing. Construction was completed in 1983. The original owner of the project was Virginia Crossings Limited Partnership. Prior to completion of the project, the Bank determined that the owner would not be able to meet its loan obligations. To avoid foreclosure, the Bank sought another borrower to replace the limited partnership.
 
 
 7
 On March 24, 1983, the Bank offered ownership of the project to a customer, Dwayne Janikula. The terms of that offer were outlined in a memorandum from the Bank's president, Harry Jensen (the "Janikula memorandum"). The terms included interest-only payments and a limited personal liability of $42,000. Janikula turned down the offer.
 
 
 8
 In May 1983, representatives of the Bank approached David Stewart and Leo W. Lund. The Bank proposed that they acquire the project in accordance with the terms outlined in the Janikula memorandum. The Bank also informed Stewart and Lund that an application for tax exempt financing of the project had been made to the St. Paul Housing and Redevelopment Authority ("HRA").
 
 
 9
 Stewart and Lund accepted the Bank's offer. They formed a general partnership known as "Virginia Crossings Partnership" which entered into a purchase agreement on June 15, 1983 to acquire the project from its first owner.
 
 
 10
 The HRA and appellants were scheduled to close on the tax exempt bonds on or before July 1, 1983. There were delays, however, in processing the application. In the interim, the Bank made a proposal to provide "bridge" financing to Stewart and Lund until the HRA proceeds became available. In a memorandum to appellants dated July 7, 1983, Jensen set forth the terms of this short-term loan (the "Jensen memorandum"). He stated that the loan would be structured according to the terms of the Janikula memorandum.
 
 
 11
 This short-term financing arrangement closed on July 19, 1983. Stewart and Lund executed and delivered to the Bank their personal guarantees the next day. Each appellant guaranteed, "absolutely and unconditionally", the prompt payment when due of any and all existing and future debt of Virginia Crossings to the Bank, up to $210,000. These guarantees continued until notice of written termination by appellants. In a letter accompanying the guarantees (the "Lund letter"), Lund stated that it was his understanding that, upon obtaining the permanent tax exempt financing from HRA, the limited guarantees of $210,000 would be replaced with a joint guarantee of $42,000.
 
 
 12
 On December 30, 1983, Jensen delivered the tax exempt financing documents to Stewart and Lund. According to Stewart's affidavit, Jensen asked them to execute the documents immediately "in order to assure tax-exempt treatment of the transaction and [to allow] the Bank [to] 'book' the loan in 1983." On that same day, appellants signed the documents in the places marked by Jensen and returned them to bond counsel.
 
 
 13
 The documents signed by appellants did not contain the proposed financing terms outlined in the Janikula memorandum. Instead, the secured and unsecured notes provided for payments of principal and interest, and made no reference to the $42,000 limit on the personal guarantees of Stewart and Lund. The limited guarantees of $210,000 executed by Stewart and Lund on July 19, 1983 were not returned to them, nor were they replaced by a joint guarantee limited to $42,000.
 
 
 14
 Beginning February 1, 1984, the Partnership began making interest-only payments to the Bank on the notes in accordance with the Janikula memorandum.
 
 
 15
 On July 19, 1984, the Minnesota Commissioner of Commerce declared the Bank insolvent, closed the Bank, and appointed the FDIC as receiver. Subsequently, pursuant to 12 U.S.C. Sec. 1823(c)(2)(A), the FDIC, in its corporate capacity, purchased from the receiver the assets here involved, including the notes, appellants' guarantees of July 19, 1983, and other related documents.
 
 
 16
 On March 14, 1988, the FDIC declared the secured and unsecured notes in default, since the Partnership had made no payments of principal as required by the loan agreement. On May 19, 1988, the FDIC commenced the instant action to collect on the notes and the personal guarantees executed by appellants and to foreclose on the mortgage. Appellants asserted various defenses, including fraud on the part of the Bank and termination of the guarantees. They claimed that the Bank committed fraud in obtaining their signatures on the loan documents by misrepresenting the terms of those documents which they thought contained the terms outlined in the Janikula memorandum. They also claimed that Lund's letter of July 20, 1983 to the Bank terminated prospectively their $210,000 limited guarantees upon expiration of the "bridge" loan. On June 7, 1989, the FDIC moved for summary judgment on all claims on the ground that the defenses interposed by appellants were barred by Sec. 1823(e) and federal common law under D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). At a hearing held the same day, the district court determined that Sec. 1823(e) controlled and granted the FDIC's motion. Judgment was entered on July 5, 1989.
 
 
 17
 This appeal followed.
 
 II.
 
 18
 Our standard of review of the district court's grant of summary judgment is well-settled. Under Fed.R.Civ.P. 56(c), a motion for summary judgment should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In making this determination, we must review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. FDIC v. Kratz, 898 F.2d 669, 670 (8th Cir.1990); AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987).
 
 III.
 
 19
 With the foregoing in mind, we turn first to appellants' contention that there are genuine issues of material fact as to whether the Janikula and Jensen memoranda meet the specific requirements of Sec. 1823(e). Appellants claim that the Janikula and Jensen memoranda confirm the terms of the loan agreement between the parties, including interest-only payments and limited personal liabilities of $42,000, and are valid defenses to the instant action. We disagree. Since the memoranda do not meet the contemporaneous execution requirement of Sec. 1823(e), we hold that those documents are not valid against the FDIC.
 
 
 20
 The controlling statute here involved, 12 U.S.C. Sec. 1823(e), provides:
 
 
 21
 "No agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it ... either as security for a loan or by purchase ... shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution."
 
 
 22
 Congressional intent requires our determination of whether the Janikula and Jensen memoranda meet the requirements of Sec. 1823(e). See Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In Langley, the Court explained that the statute was designed with two purposes in mind: first, "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets"; and, second, "[to] ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." 484 U.S. at 91-92, 108 S.Ct. at 401. In enacting this "categorical recording scheme," Congress "opted for the certainty of the requirements set forth in Sec. 1823(e)." Id. at 95, 108 S.Ct. at 403.
 
 
 23
 We hold that at least one of these requirements has not been met. The plain language of Sec. 1823(e) requires that an agreement, to be effective against the FDIC, must be executed by the bank and the obligor contemporaneously with the making of the note. The Janikula and Jensen memoranda clearly do not meet that requirement. These documents were dated well in advance of the making of the notes on December 30, 1983. Moreover, the memoranda, which were prepared by the Bank, were never executed by appellants.
 
 
 24
 Appellants urge us to overlook these obvious infirmities, contending that each memoranda "complies with the purpose of the requirement." They assert that, "where the parties sufficiently evidence their awareness and acceptance of the written terms of a 'side' agreement at a time prior to approval by senior bank officials and execution of the final documents, the purpose of mutual contemporaneous execution is met." In view of the "categorical" requirements of Sec. 1823(e), we are constrained to reject this assertion. See Langley, supra, 484 U.S. at 94, 108 S.Ct. at 402 (refusing to "engraft an equitable exception upon the plain terms of the statute"); FDIC v. Cardinal Well Services Co., 837 F.2d 1369, 1372 (5th Cir.1988) ("Congress erected a stout barrier in 12 U.S.C. Sec. 1823(e)").
 
 
 25
 The Sixth Circuit's decision in FDIC v. Cremona Co., 832 F.2d 959 (6th Cir.1987), cert. dismissed, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988), does not change our analysis, as appellants assert. There the court held that, where a document was prepared by the bank, the congressional purpose behind the requirement of contemporaneous execution by the bank is satisfied. Id. at 963. It was undisputed that the document was presented to and signed by the obligor at the same time as the making of the note. Id. The Cremona court concluded, therefore, that the document was executed by the bank and the obligor contemporaneously with the acquisition of the asset by the bank. In contrast, in the instant case, the Janikula and Jensen memoranda (dated respectively March 24, 1983 and July 7, 1983) were prepared by the Bank several months before the December 30, 1983 loan transaction, and were never executed by appellants. To allow appellants to use these documents against the FDIC would undermine the legislative purpose behind Sec. 1823(e).
 
 
 26
 We hold that, since the Janikula and Jensen memoranda do not satisfy the contemporaneous execution requirement of Sec. 1823(e), they have no validity against the FDIC. In light of our holding, we need not address appellants' contention that summary judgment was improperly granted on the ground that the FDIC "has thwarted [their] efforts to establish compliance with Section 1823(e) by failing to produce minutes from board of directors meetings." Even if we assume arguendo that the Janikula and Jensen memoranda met the other three requirements of Sec. 1823(e), including approval by the board of directors or the loan committee as reflected in the minutes, appellants have not established compliance with the statutory requirements in full.
 
 IV.
 
 27
 We turn next to appellants' contention that their fraud claim is not barred by Sec. 1823(e) and therefore is a valid defense against the FDIC. According to appellants, the alleged fraud is "fraud in the factum", a defense that falls outside the scope of Sec. 1823(e). The FDIC in turn asserts that appellants' allegations, even if true, merely establish "fraud in the inducement". We agree with the FDIC and hold that appellants' fraud defense falls squarely within the ambit of Sec. 1823(e).
 
 
 28
 The crux of appellants' fraud defense is that the two notes here involved were procured by Jensen's misrepresentations that the loan agreement included the terms stated in the Janikula memorandum, when in fact it did not. Appellants alleged that, although Jensen knew they were relying on the terms outlined in the Jensen and Janikula memoranda and he knew that the terms of the HRA documents differed materially from the agreed upon terms, Jensen remained silent about the difference when presenting the documents for their signatures. Moreover, appellants claim that Jensen encouraged immediate execution in order to prevent them from discovering the difference, while offering a plausible explanation for the urgency. In advancing their fraud defense, appellants contend that they are not asserting the validity of the terms of the Janikula and Jensen memoranda, but are offering the documents as extrinsic evidence of what the terms of the loan were meant to be.
 
 
 29
 We find, however, that appellants' fraud allegations amount to precisely the type of defense barred by Sec. 1823(e), i.e., fraud in the inducement. Langley, supra, 484 U.S. at 93, 108 S.Ct. at 402. In the instant case, the FDIC commenced this action against appellants seeking to collect on facially unqualified notes. Appellants, in order to vary the terms of the loan agreement, are attempting to assert side agreements and understandings with the Bank that do not comply with the stringent requirements of Sec. 1823(e). As we have held, the defense of fraud in the inducement is unavailing "unless the representation was in writing, contemporaneously made with the guaranty, approved by the bank's board of directors, and made part of the bank's records continuously since the guaranty was made." FDIC v. Kratz, supra, 898 F.2d at 671.
 
 
 30
 Appellants assert, however, that "if the fraud defense is based on a misrepresentation of fact as opposed to a separate, unrecorded promise by the bank, Section 1823(e) is inapplicable." We disagree. In Langley, the Supreme Court held that under Sec. 1823(e) the defense of fraud in the inducement, whether based on a misrepresentation of an existing fact or an express promise to perform an act in the future, cannot be asserted against the FDIC. 484 U.S. at 90-93, 108 S.Ct. at 400-02. The Court explained that "one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise ... or of the truthfulness of a warranted fact." Id. at 93, 108 S.Ct. at 402 (emphasis added); see also D'Oench, Duhme & Co., supra, 315 U.S. at 460, 62 S.Ct. at 680 (federal common law).
 
 
 31
 In reaching its decision, the Langley Court suggested that "the real defense of fraud in the factum--that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents ... would take the instrument out of Sec. 1823(e), because it would render the instrument entirely void." 484 U.S. at 93, 108 S.Ct. at 402 (citing U.C.C. Sec. 3-305(2)(c), comment 7). To establish fraud in the factum, appellants must have shown not only that they were induced to sign the loan documents by the Bank's misrepresentations without knowledge of their character or essential terms, but also that they had no reasonable opportunity to obtain such knowledge. Minn.Stat. Sec. 336.3-305(2)(c). Appellants have failed to establish the latter requirement.
 
 
 32
 In determining whether a party had a reasonable opportunity to obtain knowledge of the true nature of an instrument, all relevant factors are to be taken into account, including the age of the party, his intelligence, education and business experience, his ability to read and to understand English, the party's reason to rely on the representations or to have confidence in the party making them, and the apparent necessity for acting swiftly. U.C.C. Sec. 3-305(2)(c), comment 7; see also FDIC v. Turner, 869 F.2d 270, 273 (6th Cir.1989).
 
 
 33
 Applying these factors, the district court correctly held that appellants' allegations are insufficient as a matter of law to establish fraud in the factum. As the court observed, appellants had the loan documents in their possession prior to execution and had every opportunity to read and analyze them, but simply failed to do so. Appellants argue, however, that they justifiably relied on Jensen's misrepresentations and that they did not examine the documents because Jensen urged them to sign quickly. This argument is meritless. The court found that appellants are educated, experienced businessmen who had no special reason to rely on the statements of a bank representative. Under the circumstances of the instant case, we agree with the district court that the mere fact that Jensen encouraged appellants to sign the documents quickly is insufficient to establish fraud in the factum. As the court properly concluded, appellants' fraud claim constitutes "precisely the kind of case ... that 1823(e) was created to cover. The [appellants] signed the notes without reading their terms, despite the fact they had every opportunity to do so."
 
 
 34
 We hold that appellants' fraud claim amounts to fraud in the inducement and therefore is barred by Sec. 1823(e). We also hold that, since appellants had a reasonable opportunity to obtain knowledge of the true nature of the loan documents prior to execution, they have failed to establish fraud in the factum.
 
 V.
 
 35
 This brings us to appellants' final argument, namely, that Lund's letter of July 20, 1983 to the Bank terminated prospectively their limited guarantees of $210,000 upon expiration of the short-term loan. We find this argument to be unavailing. We agree with the district court that Sec. 1823(e) bars any defense based on the Lund letter.
 
 
 36
 The limited guarantees executed by appellants on July 19, 1983 provided in relevant part:
 
 
 37
 "This guaranty is made and shall continue as to any and all such indebtedness and liability of [Virginia Crossings] to the Bank incurred or arising prior to receipt by the Bank of written notice of the termination hereof from the undersigned ...."
 
 
 38
 In an attempt to avoid liability on the guarantees, appellants claim that "the guarantees were terminated in writing as required by their own terms." They assert that Lund's letter to the Bank's president "constituted notice of termination effective upon the occurrence of a condition subsequent, namely, the completion of the HRA financing." In that letter, Lund wrote: "Upon execution of the mortgage note, you [Jensen] agree to return to Dave and me our limited guarantees of $210,000.00 each, to be replaced by a joint guarantee of $42,000.00 as you stated in your 3/24/83 letter to Janikula." Relying on this letter, appellants claim that their personal guarantees terminated upon execution of the mortgage note on December 30, 1983, and were replaced with a joint guaranty of $42,000.
 
 
 39
 The FDIC counters that the Lund letter is subject to the requirements of Sec. 1823(e) and cannot be used to defeat its interest in the facially valid guarantees. We agree. As the district court correctly ruled, the guarantees clearly are assets of the FDIC within the meaning of Sec. 1823(e). Any agreement therefore tending to defeat or diminish the FDIC's interest in the guarantees must comply with the demanding requirements of the statute. Contrary to appellants' contention, their defense to liability on the guarantees is predicated on an undisclosed side agreement which would defeat the FDIC's interest in its assets. Consequently, we hold that the Lund letter has no validity against the FDIC since it does not comply with the statutory requirements. See FDIC v. Galloway, 856 F.2d 112, 116 (10th Cir.1988) ("under Langley's broad construction of the term 'agreement' in 12 U.S.C. Sec. 1823(e), that section protects the FDIC from being bound by any side agreements, understandings or representations limiting the scope of a continuing guaranty unless they have been put in writing and kept as official bank records"); see also Templin v. Weisgram, 867 F.2d 240, 242 (5th Cir.) ("Where ... an instrument's invalidity can be established only by reference to a side agreement in which all parties voluntarily participated, the reasoning and legislative intent underlying section 1823(e) apply with full force."), cert. denied, --- U.S. ----, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989). As we have recognized, "the FDIC must be able to rely on the records of the failed bank", and "[t]his process would be frustrated if 'seemingly unqualified notes [were] subject to undisclosed conditions.' " FDIC v. Newhart, 892 F.2d 47, 50 (8th Cir.1989) (quoting Langley, supra, 484 U.S. at 92, 108 S.Ct. at 401).
 
 
 40
 In an attempt to circumvent the broad reach of Sec. 1823(e), appellants contend that, since the guarantees expressly provide for termination by written notice, their defense of termination arises from the face of the agreements that the FDIC is seeking to enforce. Relying principally on Howell v. Continental Credit Corp., 655 F.2d 743 (7th Cir.1981), and Riverside Park Realty Co. v. FDIC, 465 F.Supp. 305 (M.D.Tenn.1978), appellants urge that Sec. 1823(e) does not apply to the Lund letter. We disagree.
 
 
 41
 Initially, we observe that, even when examined in the light most favorable to appellants, the evidence indicates that the Lund letter did not comply with the termination provision of the guarantees. As the FDIC points out, and we agree, the Lund letter, at best, simply reflects appellants' intention to terminate and replace the guarantees sometime in the future. It is undisputed that, when the HRA financing came through, appellants failed to follow through on their understandings with the Bank by terminating the guarantees in writing and replacing them with a joint guarantee limited to $42,000. The guarantees of $210,000 were not returned to appellants, but were in the Bank's files when the FDIC purchased them.
 
 
 42
 Moreover, appellants' reliance on Howell, supra, and Riverside Park Realty, supra, is misplaced. None of those cases involved an undisclosed side agreement such as that in the instant case. In Howell, the issue before the court was whether the FDIC purchased leases subject to the borrower's defense that the original lessor failed to provide adequate consideration. The court held that the FDIC was bound by the terms of the leases because Sec. 1823(e) is inapplicable "where the document the FDIC seeks to enforce is one, such as the leases here, which facially manifests bilateral obligations and serves as the basis of the lessee's defense." 655 F.2d at 746 (emphasis in original). The court observed that the leases directly set forth the bilateral nature of the lessee's and lessor's rights and obligations. It found that the borrower's defense "arises directly and explicitly from the provisions of the leases which were in the bank's files and which the FDIC now seeks to enforce." Id. at 747.
 
 
 43
 In Riverside Park Realty, the FDIC attempted to foreclose under a deed of trust on real property owned by plaintiffs. Plaintiffs sought to enjoin the foreclosure, asserting a breach of the loan agreement on the part of the FDIC's assignors, the mortgage company and a bank. The FDIC contended that this defense was barred by Sec. 1823(e). The court disagreed and held:
 
 
 44
 "When ... the asset upon which the FDIC is attempting to recover is the very same agreement that the makers allege has been breached by the FDIC's assignors, Sec. 1823(e) does not apply. None of the policies that favor the invocation of this statute are present in such cases because the terms of the agreement that tend to diminish the rights of the FDIC appear in writing on the face of the agreement that the FDIC seeks to enforce."
 
 
 45
 Riverside Park Realty, supra, 465 F.Supp. at 313 (emphasis in original). The court stressed that the deed of trust upon which the FDIC sought to foreclose incorporated by reference the terms of the loan agreement and that the deed of trust note, which in essence was the asset the FDIC sought to enforce, contained those very terms. Id.
 
 
 46
 Unlike in Howell and Riverside Park, appellants' defense here does not arise "directly and explicitly" from the face of the agreements that the FDIC is seeking to enforce, but must be proven by resort to an undisclosed side agreement altering the terms of those agreements. The terms of the Lund letter which appellants are attempting to assert against the FDIC are not apparent from the face of the guarantees, but are contained in a separate agreement. And unless that separate agreement satisfies the requirements of Sec. 1823(e), it cannot be asserted against the FDIC. Cf. FDIC v. O'Neil, 809 F.2d 350, 354 (7th Cir.1987) (the mere fact that the side agreement--rather than its conditions--was referred to in the asset the FDIC sought to enforce did not preclude the application of Sec. 1823(e)).
 
 
 47
 We hold that appellants' defense to liability on their guarantees based on the Lund letter is barred by Sec. 1823(e).
 
 VI.
 To summarize:
 
 48
 We hold that, because the Janikula and Jensen memoranda fail to comply fully with the requirements of Sec. 1823(e), those documents cannot be used against the FDIC. We also hold that appellants' fraud and termination defenses are barred by Sec. 1823(e). Accordingly, we hold that the district court properly granted summary judgment in favor of the FDIC.
 
 
 49
 Affirmed.
 
 
 
 *
 Of the Second Circuit, sitting by designation