FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Plaintiff,

v.

Richard P. VOGEL and Russell W. Spitz, Defendants.

No. 76–C–574.

United States District Court, E. D. Wisconsin.

Sept. 23, 1977.

Gregory G. Wille, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Richard J. Rakita, Rakita & Rakita, Milwaukee, Wis., for Vogel.

David A. Saichek, Gaines & Saichek, Milwaukee, Wis., for Spitz.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This action is before the Court on the plaintiff's motion for summary judgment on its complaint against Richard P. Vogel and Russell W. Spitz as well as the counterclaim asserted against it by Russell W. Spitz. The pleadings in this case reveal a rather complicated set of facts.

In 1973, the American City Bank made a loan to Germantown Development Company, Inc. (Germantown), for the purpose of acquiring some land in Arizona. The loan was in the amount of $1,250,000 and was secured by a first mortgage on the land. It was to become due on September 27, 1973. The note evidencing the loan was not paid in September, presumably because of the inability of Germantown to secure a long term lender.

In January of the following year, American City Bank was advised that Tri-South Mortgage Investors (Tri-South) had agreed to make the long term loan to Germantown. The proceeds of the loan were to be used to pay the note held by American City. As part of the commitment to Germantown, Tri-South required that it be provided "at time of closing an irrevocable letter of credit for the term of the loan in the amount of $100,000 to be drawn down by lender at lender's option, should Borrower fail to make any interest payment when due." The original commitment letter required a $200,000 letter of credit but this was subsequently renegotiated to $100,000.

On February 4, 1974, Germantown sent a letter to American City Bank requesting that it issue "a clean Irrevocable Letter of Credit in the amount of One Hundred Thousand Dollars ($100,000) for two (2) years to Tri-South Mortgage Investors." This letter was signed by Russell W. Spitz as President of Germantown.

On February 6, 1974, American City Bank sent a telegram to Valley National Bank of Phoenix, Arizona opening the letter of credit. The letter of credit stated:

> We hereby authorize you to draw on us for a sum or sums not exceeding One Hundred Thousand and no/100 United States Dollars for Account of Germantown Development Co., Inc., 5231 N. 124th Street, Milwaukee, Wisconsin. Available by your draft at sight accompanied by the following documents: Beneficiary's signed certification that account party has failed to make any interest payment when due under the terms of loan granted by beneficiary to account party.

The Tri-South loan to Germantown was closed on February 6, 1974 and the $1,250,-000 loan from American City Bank was repaid by Germantown.

During this same time period, Germantown was negotiating with American City Bank for a loan of $915,000 in order to acquire additional land in Arizona. American City issued its commitment for this loan on February 11, 1974. The commitment letter stated:

> This letter will provide you with a firm commitment of American City Bank & Trust Company, n. a., to loan to you the sum of $915,000 on the conditions previously agreed upon at such time as Chicago Title Insurance Company advises us that all their requirements are fulfilled and they will issue an ALTA loan policy on this loan.

The loan was closed the following day and on that date also, Russell Spitz and Richard Vogel signed a joint and several guaranty. The guaranty provided that:

> The undersigned [Spitz and Vogel] hereby jointly and severally promise and agree to pay or cause to be paid to said Bank all loans, drafts, overdrafts, endorsements, accounts, checks, notes, interest and all other indebtedness, obligations and liabilities of every kind and description, whether of the same or a different

nature, now existing or owing or which may hereafter exist or become due or owing . . . by Germantown Development Company, Inc., . . . whenever the same, or any part thereof, shall be due, including interest thereon and all costs, expenses and reasonable attorney's fees at any time paid or incurred in endeavoring to collect such indebtedness, liabilities, or obligations, or any part thereof.

On August 22, 1974, Tri-South sent a letter to American City Bank enclosing a certification that Germantown "had failed to make an interest payment when due under the terms of the referenced loan," and a sight draft for $100,000 drawn under American City Bank Letter of Credit No. 1505. American City Bank honored the draft on September 3, 1974 and paid the $100,000 to Tri-South.

The same day that the letter of credit was honored, Germantown filed a petition in bankruptcy seeking a reorganization under Chapter XI. American City then brought this action in state court against Richard P. Vogel to enforce the guaranty on the indebtedness of Germantown arising out of the letter of credit.

On October 21, 1975, by order of the Comptroller of the Currency pursuant to the National Banking Act, American City Bank was declared insolvent and the FDIC was appointed as its receiver. Certain assets of the American City Bank, including the indebtedness and the guarantee presently in question were sold by the receiver to the FDIC pursuant to 12 U.S.C. § 1823.

The FDIC then entered the action, removed it to this Court, and filed an amended complaint seeking to recover on the guarantees of both Mr. Vogel and Mr. Spitz.

There is no dispute in this action concerning the fact that the letter of credit was issued, that it was paid, or that the two defendants personally guaranteed the obligations of Germantown. The dispute in this action is raised by several affirmative defenses. These issues are also the basis of the set-off alleged by Vogel and the counterclaim filed by Spitz.

The defendants to this action contend that their guarantees were given, at least in part, for a promise on the part of American City Bank to loan to the defendants $2,000,-000 in order that they might purchase Hunt Valve Company. The set-off and counterclaim are based on the failure of American City Bank to make the loan.

The defendants also contend that the letter of credit was to be drafted so that Tri-South would be able to draw on it only to the extent of interest then delinquent. The American City Bank is alleged to have been delinquent in paying the entire $100,-000 and in failing to ascertain or verify the amount of delinquent interest when Tri-South presented the draft.

Defendant Spitz also contends that the payment of American City Bank to Tri-South of the $100,000 was wrongful in that it violated the automatic stay order of the bankruptcy court.

The first defense raised is one of a failure of consideration. The affidavit of Edward C. Radi filed on behalf of the plaintiff states that although conversations were held concerning a possible loan to the defendants by American City Bank for the purchase of the Hunt Valve Company, Mr. Radi "made American City Bank's position very clear . . . that American City Bank had no interest in making such a loan." Mr. Radi asserts that the guarantees in question were given in consideration for the commitment of American City Bank to loan $915,000 to Germantown. The minutes of the loan committee of February 12, 1974, attached to Mr. Radi's affidavit support this statement.

The affidavits of both Mr. Spitz and Mr. Vogel directly contradict the affidavit of Mr. Radi. The defendants both assert that although no written commitment to issue the loan was made by American City, Mr. Radi, a senior vice-president and chief lending officer of American City Bank, made an oral commitment to issue the loan and that this promise was the consideration given by American City Bank for the personal guar-

antees in question. The defendants have also filed the affidavit of Mr. Francis Lee who was handling the negotiations for the sale of the Hunt Valve Company for Hunt's parent corporation. This affidavit relates a conversation between Mr. Radi and Mr. Lee in which Mr. Radi "confirmed that subject to board approval the bank would assist in the financing of the . . . purchase."

Despite the obvious issues of fact relating to American City's commitment to make the $2,000,000 loan and whether this commitment was part of the consideration given in exchange for the guaranties in question, the Court finds that the defense must fail as a matter of law. It is undisputed that assuming that the commitment was made, it was not written nor approved by the board of directors or loan committee. Section 1823(e) of Title 12, U.S.C. precludes such an agreement. That section states:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

This section allows the FDIC, when it has purchased assets in its corporate capacity, to disregard oral agreements which would diminish or defeat its interest in any asset so purchased. *Dasco, Inc. v. American City Bank & Trust Co.*, 429 F.Supp. 767 (D.Nev. 1977).

The defendants have made several arguments in an attempt to blunt the express provisions of § 1823. The first argument presented seeks to equate § 1823 with a statute of frauds. The argument presented is that partial performance of the oral contract or detrimental reliance on the oral promise of American City Bank will operate to negate § 1823. The argument must fail for several reasons.

Section 1823(e) is not simply a statute of frauds. It is based on a federal public policy. It operates to insure that the FDIC, when it expends moneys intrusted to it to purchase assets of a closed insured bank, can rely on the bank's records and will not be risking an impairment of the assets through an agreement not contained in the bank's records. To judicially engraft an exception based on partial performance of an oral contract with the closed bank or detrimental reliance on an oral promise made by the closed bank is simply to ignore the clear phrasing of the statute.

Once the FDIC, acting in its corporate capacity, purchases the assets of the closed bank, it is simply not a successor in interest to the closed bank. Section 1823(e) provides it with more protection than the bank or its receiver. The fact that the receiver in this case is also the FDIC does not change the result. Section 1823 expressly allows the FDIC as receiver to sell the assets of a closed bank to the FDIC in its corporate capacity. Subsection (d) states:

> The Corporation, in its discretion, may make loans on the security of or may purchase and liquidate or sell any part of the assets of an insured bank which is now or may hereafter be closed on account of inability to meet the demands of its depositors, but in any case *in which the Corporation is acting as receiver of a closed insured bank, no such loan or purchase shall be made without the approval of a court of competent jurisdiction.* (emphasis added).

Again, in subsection (e), the transaction is allowed.

> Any insured national bank or District bank, *or the Corporation as receiver thereof*, is authorized to contract for such sales or loans and to pledge any assets of the bank to secure such loans. (emphasis added).

The defendants have also argued that the FDIC cannot acquire more rights by purchasing the assets than it holds as receiver. This argument directly contradicts the express terms of the statute as discussed above. The FDIC, as receiver of a closed bank, does not have available to it the protection provided in the last paragraph of § 1823(e). Congress expressly gave this protection to the FDIC when, acting in its corporate capacity, it expends funds to purchase assets. Congress was well aware that the sale may be conducted by the FDIC as receiver on the one hand and the FDIC in its corporate capacity on the other. This Court cannot, by judicial fiat, repeal § 1823(e) in all cases when the FDIC acts as the receiver of the closed bank.

The second defense raised in this action pertains to the terms of the letter of credit itself. The defendants contend that the letter of credit allowed Tri-South to draw on it only to the extent of any delinquent interest. The affidavit of Mr. Radi and the documents attached to the affidavit show that the letter of credit was requested by Germantown in a February 4, 1974 letter to Mr. Radi. The letter requested that an irrevocable letter of credit in the amount of $100,000 for a period of two years be issued to Tri-South. Attached to the letter was a copy of Tri-South's loan commitment which required that Germantown provide to Tri-South "an irrevocable Letter of Credit for the term of the loan in the amount of $200,000 to be drawn down by Lender at Lender's option, should Borrower fail to make any interest payment when due." A hand written note on the commitment letter immediately under the portion quoted above stated: "changed to $100,000 General letter of credit 24 mos. upon proof of failure of lender to pay interest when due R.P.V." The letter of credit was drafted in precisely these terms, providing that Tri-South could draw $100,000 on the letter upon proof that Germantown "has failed to make any interest payment when due."

Defendant Vogel in his affidavit has stated that "upon information and belief, the letter of credit . . . was intended to be drawn against only to the extent that

Germantown Development Co., Inc. had defaulted in the payments of interest. . . ." Defendant Vogel has filed an affidavit to the same effect stating that "all persons involved with the Letter of Credit knew the intent was to pay only so much interest as might be in default from time to time."

■ The defense is also unavailing. The parol evidence rule as well as 12 U.S.C. § 1823(e) prevents the defendants from raising the defense. The letter of credit, as well as the request from Germantown to issue the letter, is unambiguous. Tri-South was to be permitted to draw on the letter of credit to the full extent of its terms if any interest payments were in default. The Court need not decide whether the writings evidencing this transaction contain all the agreements thereto.

[W]hen a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to consider parol evidence which establishes the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing. *Production Credit Association v. Rosner*, 78 Wis.2d 543, 255 N.W.2d 79 (1977) quoting *Morn v. Schalk*, 14 Wis.2d 307, 111 N.W.2d 30 (1961).

The defendants seek, in this defense, to introduce parol testimony which would directly contradict the written terms of the letter of credit. This they may not do under the terms of the parol evidence rule.

Section 1823(e), as discussed above, would also preclude this oral contradiction of the bank records from defeating the plaintiff's interest in this asset.

■ The remaining defenses must be dismissed as a matter of law. The fact that the bank failed to honor the credit within the time requirements of Wis.Stats. § 405.-112 does not relieve the defendants of their liability. The bank had an obligation to honor the draft presented to it. If any rights were created by the bank's failure to timely honor the draft, those rights accrued

not to Germantown or the defendants, but to Tri-South. Nor did the bank have a duty to inquire of its customer the status of its interest payments to Tri-South or notify it of the demand of Tri-South. Its only duty was to review the documents presented to it to determine if the conditions contained in the letter of credit were met, and once satisfied that the conditions were met, to honor the draft.

The final defense raised is that the payment of the draft on September 3, 1974 violated the automatic stay provisions of the Bankruptcy Act since Germantown filed its petition in bankruptcy on the same day. Bankruptcy rule 11-44 provides that a petition filed under Chapter XI operates "as a stay of the commencement or the continuation of any court or other proceeding against the debtor . . . or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property . . . ."

■ The payment of the draft in accordance with the terms of the letter of credit did not violate the stay provisions. Payment created a debt in favor of American City, but it was not a lien enforcement action. American City merely fulfilled its obligation to substitute itself for Tri-South as the creditor of Germantown to the extent of $100,000. Neither the letter nor the spirit of the rule was violated.

■ The set-off and counterclaim alleged by the defendants must also be dismissed. Any action arising out of a breach of contract by American City Bank must be alleged against the bank's receiver, not against the plaintiff herein. The FDIC, in its corporate capacity, is not liable for any damages accruing in this respect to the defendants. If damages are owing, they must be paid out of the funds accruing to FDIC as the receiver of the bank, not out of the public funds entrusted to the FDIC in its corporate capacity.

The plaintiff has also sought to recover, in this action, the commission fee of $4,000 charged by American City Bank for issuing the letter of credit. The affidavit of Mr. Radi and the documents attached thereto establish the existence of the debt. This affidavit has not been contradicted by any affidavit or other document filed by the defendants.

The amount of the debt currently owing to the plaintiff is established in the affidavit of Mr. Gordon Haberman, assistant liquidator for the FDIC. This affidavit has not been contradicted by the defendants and no factual issue exists as to the amount of the debt. The following computation of damages is contained in Mr. Haberman's affidavit. The bankruptcy payments are payments made to the plaintiff by Germantown which operate to reduce the defendants' indebtedness.

| | | |
|---|---|---|
| principal | $100,000.00 | |
| commission fee | 4,000.00 | |
| | | $104,000.00 |
| 5% interest 9/3/74–7/14/75 | | 4,471.36 |
| | | $108,471.36 |
| 7/14/75 bankruptcy payment | | (20,800.00) |
| | | $ 87,671.36 |
| 5% interest 7/15/75–10/8/75 | | 1,020.83 |
| | | $ 88,692.19 |
| 10/8/75 bankruptcy payment | | (2,818.00) |
| | | $ 85,874.19 |

For the reasons stated above, the plaintiff's motion for summary judgment is granted against the defendants in the amount of $85,874.19 plus interest at the rate of 5% accruing from October 8, 1975. The set-off and counterclaim alleged against the plaintiff is dismissed.

SO ORDERED this 28th day of September, 1977, at Milwaukee, Wisconsin.