FEDERAL DEPOSIT INSURANCE COR-
PORATION, Plaintiff, Appellee,

v.

Andres Acosta OTERO et al.,
Defendants, Appellees,

v.

BANCO CENTRAL Y ECONOMIAS,
Counterdefendant, Appellant.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, Plaintiff, Appellee,

v.

Manuel A. LOPEZ DE VICTORIA et al.,
Defendants, Appellees,

v.

BANCO CENTRAL Y ECONOMIAS,
Counterdefendant, Appellant.

Nos. 78–1388, 78–1389.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1979.

Decided May 1, 1979.

Jose A. Gonzalez Gierbolini, Trujillo, P. R., with whom Juan E. Rodriguez Diaz, and Sweeting, Pons, Gonzalez & Rodriguez, San Juan, P. R., were on brief, for counterdefendant, appellant.

Ruben O. Figueroa, Hato Rey, P. R., with Figueroa & Nassar, Hato Rey, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal by a third-party defendant Banco Central y Economias from the refusal of the district court to remand two collection suits to state court. Appellant claims that defendants could not remove these actions under 12 U.S.C. § 1819(4)[1] because the Federal Deposit Insurance Corporation (FDIC) was not an original party plaintiff to the state court suit and because the FDIC is the only party that can remove an action under the Federal Deposit Insurance Act. In the alternative appellant argues that the district court lacked subject matter jurisdiction to hear appellees' counterclaim against appellant. We affirm.

The factual background of this case is fairly straightforward. Banco Economias, a commercial bank organized under the laws of the Commonwealth of Puerto Rico, sued the defendants in Commonwealth court to collect on defaulted loans. Defendants counterclaimed for fraud, seeking rescission and damages. While the Commonwealth court suits were pending, the FDIC purchased the obligations of the defendants from the failing Banco Economias in the course of a reorganization plan whereby the FDIC bought the "bad" assets of the failing bank while Banco Central assumed by merger the remaining assets and liabilities. The FDIC then stepped in as party plaintiff in the collection suits and Banco Central y Economias assumed the role of the former Banco Economias as defendant in the counterclaims. Defendants then removed the actions to federal court. The appellant and the FDIC unsuccessfully moved to remand,

FDIC v. Lopez Victoria, 448 F.Supp. 843 (D.P.R.1978),[2] giving rise to this appeal.

Appellant first argues that the "mere substitution" of the FDIC as a party should not transform a suit into one arising under the laws of the United States. Appellant's primary argument is based upon the "well pleaded complaint" rule of Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Unfortunately for appellant, it is well established that when the plaintiff by a voluntary act interposes a federal question that did not appear in the complaint as originally filed, the defendant may remove the case to federal court. 28 U.S.C. § 1146(b); Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 280, 38 S.Ct. 237, 62 L.Ed. 713 (1918); see 1A Moore's Federal Practice ¶ 0.157[12]. We do not think that a different result should pertain when a federal question arises from the intervention of the FDIC as party plaintiff. It makes sense that "arising under" jurisdiction should be applicable when the involvement of a federal agency may put in issue the federal laws governing its rights and liabilities as a creditor. See FDIC v. Godshall, 558 F.2d 220 (4th Cir. 1977); FDIC v. Vogel, 437 F.Supp. 660, 662 (E.D.Wis.1977). We see no reason to preclude the availability of federal jurisdiction when the FDIC sues as the assignee of assets of a failing bank simply because the bank had already begun a collection suit before going under. Indeed, our research reveals that it is a common practice for the FDIC to intervene in pending suits on bad assets and remove to federal court. See, e. g., FDIC v. Vogel, supra; FDIC v. Julius Richman, Inc., 428 F.Supp. 593 (E.D.N.Y.1977).

---

1. The statute reads, in pertinent part:

   "Upon the date of enactment of the Banking Act of 1933, the [FDIC] shall become a body corporate and as such shall have power— . . . .
   Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the. United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect . . . ."

2. A subsequent motion for reconsideration of the remand issue, raising most of the arguments involved in this appeal, was denied in an unpublished opinion.

■ Appellant's second argument turns on the specific language of 12 U.S.C. § 1819(4) that "the Corporation may remove" a pending state action in which it is a party. Appellant would have us read the statute as giving removal power exclusively to the FDIC.[3] We think this too strained a reading. We begin with the observation that prior to 1966, section 1819(4) provided merely that suits in which the FDIC was a party should be deemed as "arising under" the laws of the United States. This meant that *any* defendant, including the FDIC could remove. *Franklin Nat'l Bank Securities Litigation v. Andersen*, 532 F.2d 842, 844 (2d Cir. 1976). Appellant's argument requires us to assume that the 1966 amendment which adds that "[T]he Corporation may, without bond or security, remove any such action . . . ." effectively cancelled the power of non-FDIC defendants to remove under the pre-1966 statute.

■ We would make such a leap only if no other rational explanation existed for the 1966 amendment. But there seems to us to be an eminently understandable and different interpretation of that amendment. As the Second Circuit observed, the FDIC serves in a dual capacity, being both an insurer of customers' deposits and a receiver of an insolvent bank, the latter role often forcing the FDIC to act as a party plaintiff. The amendment, therefore, permitted the removal of any suit to which the FDIC was a party, "whether as a defendant or a subrogated or a realigned derivative suit plaintiff." *Franklin Nat'l Bank Securities Litigation, supra*, 532 F.2d at 845. We would add that the amendment also sought to make removal by the FDIC convenient, by eliminating the ordinary requirement of bond or security.

In short, the 1966 amendment is entirely reconcilable with the prior language of section 1819(4), without reading it as confining all removal power to FDIC exclusively. While today one may decry giving removal power to private defendants in suits which have no connection with federal matters other than the presence of FDIC as a party, this is the way the law stood before 1966 and there is no indication that the Congress was truncating removal power by the 1966 amendment. The Senate Report states merely that the amendment would "authorize the removal of such actions to the Federal courts." S.Rep.No. 1483, 89th Cong., 2d Sess., reprinted in [1966] U.S. Code Cong. & Admin.News, pp. 3532, 3559. Finally, we note that where Congress has chosen to create exceptions to the general rule of removability under § 1441, it has done so in language much clearer than that used here. *See, e. g.,* 28 U.S.C. § 1445; *Franklin Nat'l Bank Securities Litigation, supra,* at 845. In sum, we are not persuaded that Congress intended by the 1966 amendment to section 1819(4) to limit the power to remove suits in which the FDIC is a party to the FDIC alone.

Appellant next argues that even if defendant-appellees could remove the FDIC suit, the counterclaim could not be removed. Appellant points out that it is in federal court as defendant in a claim based solely on state law and that there is no independent basis for federal jurisdiction over that claim. In other words, appellant is a "pendent party". Citing only *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), appellant argues that it cannot be hailed into federal court and that the counterclaim must be remanded to Commonwealth court.

■ The district court, in a well researched but unpublished opinion, decided that despite *Aldinger* it had discretion to assume jurisdiction over the counterclaim and over appellant as a pendent party. The trial court reasoned that, but for the novel situation of a "bifurcated plaintiff", the defendants' fraud claim would be a compulsory counterclaim over which there is unquestioned ancillary jurisdiction. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243

---

**3.** We note in passing that the FDIC urged the same argument below but did not appeal from the district court's adverse decision. We consider it significant that the agency does not object to removal power in defendants in suits where the FDIC is a party.

(1974); *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). The district court pointed out that the fraud claim raised the same issues of law and the same factual questions involved in the FDIC's suit on the notes. Moreover, sending the fraud counterclaim back to Commonwealth court would raise the distinct possibility of conflicting judgments. Finally, the district court did not feel that *Aldinger* barred "pendent party" jurisdiction because that case is expressly limited to its facts.

The district court's assumption of jurisdiction requires us to decide an issue we recently left open in *Ortiz v. United States*, 595 F.2d 65 (1st Cir. 1979). In *Ortiz*, plaintiff sued the United States, asserting jurisdiction under the Federal Tort Claims Act. The government impleaded Hospital Mimiya, asserting jurisdiction under 28 U.S.C. § 1345. Plaintiff then amended her complaint to add a claim against Hospital Mimiya. We held that plaintiff's new claim, assuming it shared a common nucleus of operative facts with the FTCA claim, was within the jurisdiction of the district court. We relied, in part, upon the fact that the third-party defendant, Hospital Mimiya, was already a "federal party"—one hailed into federal court under an independent basis of federal jurisdiction. In the case at bar, defendants assert a state-law claim against one not subject to an independent basis of federal jurisdiction. We hold that, on the peculiar facts of this case, the district court nevertheless had discretion to hear defendants' counterclaim.

First, we note that *Aldinger* does not purport to answer the question at bar. While holding that pendent party jurisdiction cannot be used by a plaintiff in a civil rights action to bring otherwise immune defendants into federal court, the Court in *Aldinger* noted that "[o]ther statutory grants [of jurisdiction] and other alignments of parties and claims might call for a different result." 427 U.S. at 18, 96 S.Ct. at 2422. The only general guidance propounded in *Aldinger* was that courts should look not only to the existence of potential judicial power under Article III but also to

any express or implied Congressional intent to limit jurisdiction. This general guidance was further refined in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). As with *Aldinger, Kroger* instructs us to answer the preliminary question of potential Article III jurisdiction by applying the standard enunciated in *UMW v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We find that the "nucleus of operative facts" of the collection suit and the fraud counterclaim could not be more common. *Id.* at 725, 86 S.Ct. 1130. Thus, both claims involve the same "case" in the constitutional sense, and Article III jurisdiction over the nonfederal claim can exist.

Following the *Kroger* analysis, we look next to either express or implied Congressional intent to limit the sweep of potential Article III jurisdiction. In *Aldinger*, the Court found Congressional intent to limit jurisdiction over counties and municipalities under 28 U.S.C. § 1343 in the exclusion of such entities from the scope of the substantive statute involved, 42 U.S.C. § 1983. In *Kroger*, hearing the nonfederal claim would have expanded the traditionally narrow limits of diversity jurisdiction. In contrast, we deal here with a broad grant of jurisdiction over "[a]ll suits . . . to which the Corporation shall be a party." 12 U.S.C. § 1819(4). We find no implied intent to exclude parties or claims from suits involving the FDIC.

Finally, in addressing the question of limits on Article III jurisdiction beyond the *Gibbs* minimum requirement of commonality of facts, the Court in *Kroger* looked to the procedural context in which the nonfederal claim arose. In *Kroger*, plaintiff, an Iowa resident, brought a diversity action against a Nebraska defendant. The defendant impleaded an Iowa resident. Plaintiff then added a claim against the third-party defendant, which claim admittedly shared a common nucleus of operative facts with the initial suit. Given such commonality, plaintiff could have joined both the original defendant and the third-party defendant under F.R.Civ.P. 20. The case

against the Nebraska defendant was then dismissed. The Supreme Court held that plaintiff in a diversity action cannot evade the requirement of complete diversity by joining only defendants from other states and awaiting impleader to join claims against non-diverse parties.

In analyzing this "tainted" procedural context, the *Kroger* Court distinguished between those nonfederal claims that merely share common facts (*cf.* F.R.Civ.P. 20) with federal claims, and those claims whose procedural characteristics demonstrate a "logical dependence" upon the federal claim. 437 U.S. at 375 n. 18 & 375–76, 98 S.Ct. 2396. Such a claim is truly "ancillary". *Id.* We think the procedural context of the instant appeal reveals a clear reason to assume jurisdiction over the nonfederal claim as truly ancillary, as follows.

■ Both the court below and the parties treat the "bifurcated plaintiff" problem presented here as one of first impression. It may not be. If the FDIC had brought suit *ab initio* in federal court as holder of the notes, the procedural mechanism for holding appellant liable over to defendants would look more familiar—impleader under F.R.Civ.P. 14. Defendant-appellees' theory is that any liability to the FDIC was caused by appellants' fraudulent inducement in procuring the notes. At least three courts have held that the defendant may implead the original obligee of a note by claiming fraud in the inducement when collection suit is brought by a subsequent holder. *See United States v. Scott,* 18 F.R.D. 324 (S.D.N.Y.1958); *United States v. Hecht,* 9 F.R.D. 340 (N.D.Ohio 1949); *United States v. Pryor,* 2 F.R.D. 382 (N.D.Ill.1940). If impleader is proper, then *Kroger* is available to support the notion

that true ancillary jurisdiction encompasses the third-party complaint. As explained in *Kroger,* "[a] third-party complaint depends at least in part upon the resolution of the primary lawsuit. [citation omitted] Its relation to the original complaint is thus not mere factual similarity but logical dependence." 437 U.S. at 376, 98 S.Ct. at 2404. When a state-law claim has these characteristics, a federal court has ancillary jurisdiction over the claim. We think appellees' "counterclaim" has precisely the characteristics identified by the Supreme Court as supporting ancillary jurisdiction in the Article III sense. Nor does anything in the procedural context of appellees' claim transgress Congressional intent to limit Article III jurisdiction.[4] *See Ortiz v. United States, supra.*

■ In the three years since *Aldinger* was decided, other courts have concluded, as we do, that the Supreme Court's cautious treatment of pendent jurisdiction does not preclude pendent party jurisdiction, whether it be called "pendent" or "ancillary", in cases involving "[o]ther statutory grants and other alignments of parties . . . ." *Aldinger v. Howard, supra,* 427 U.S. at 18, 96 S.Ct. at 2422. *See, e. g., New Mexico v. Molybdenum Corp. of America,* 570 F.2d 1364 (10th Cir. 1978); *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2d Cir. 1977); *Morse Electro Prods. Corp. v. S. S. Great Peace,* 437 F.Supp. 474, 483–85 (D.N.J.1977). *But see Glus v. G. C. Murphy Co.,* 562 F.2d 880, 885–88 (3d Cir. 1977); *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977) (en banc).[5] In light of this trend, having determined under *Aldinger* and *Kroger* that the district court has the judicial power to hear the claim against the pendent party, we

---

4. We note that finding impleader to be proper in the hypothetical restructuring of this case set out above gives a broad reading to the requirement that the third-party defendant "[is] a party . . . who is or may be liable to [the defendant] for all or part of the plaintiff's claim against [the defendant]." F.R.Civ.P. 14(a). Such a broad reading is not uncommon. *See* 3 Moore's Federal Practice ¶ 14.07[1]; 6 Wright & Miller, Federal Practice & Procedure § 1442.

5. The Ninth Circuit has traditionally refused to adopt pendent party theory, claiming that pendent party jurisdiction exceeds Article III limitations. *See Ayala v. United States, supra* at 1199–1200; *Ortiz, supra,* 595 F.2d at 71 nn. 8, 13, Wright, Miller & Cooper, Federal Practice & Procedure § 3523.

inquire next as to whether various prudential factors exist sufficiently to support the district court's exercise of discretion in hearing the claim. In this phase of our inquiry we rely on those considerations articulated in *Bowers v. Moreno*, 520 F.2d 843, 846–48 (1st Cir. 1975) [6] that can fairly be characterized as directed toward the discretionary scope of pendent jurisdiction.

In *Bowers*, we approved the assumption of pendent party jurisdiction over employer trustees of a union trust fund in order that state law breach of fiduciary duty claims might be joined with federal law claims being brought against union trustees who allegedly conspired with the employer trustees to defraud the fund. As in *Bowers*, forcing trial of appellees' fraud claim in a different forum would result in a waste of judicial effort, as well as a waste of parties' time and effort. Indeed, forcing separate adjudication in this case would force almost xerographic duplication of effort, for the fraud claim raised as a defense in the FDIC action is identical to the affirmative fraud counterclaim. Because the claims are identical, their separate trials would raise a distinct possibility of conflicting obligations. Nor has appellant alleged that any difficult questions of state law are involved in the pendent claim. It can easily be resolved in federal court. Finally, adjudicating the fraud counterclaim in federal court does not impose the burden of appearing in an inconvenient forum on appellant. In sum, the prudential considerations of judicial economy, convenience, and fairness we found controlling in *Bowers* support the exercise of pendent jurisdiction in this case.

We see one other problem with retaining jurisdiction over defendant-appellees' third-party complaint—be it a cross claim or a counterclaim. The pleading filed by defendant-appellees in the Commonwealth court can be read as attempting to set forth a claim against appellant bank for defamation in making negative credit reports. We have serious reservations about the relationship of such a claim to the underlying federal claim. We doubt that this tangential relationship would support the pendent jurisdiction enumerated in *Kroger, Aldinger*, and *Bowers v. Moreno, supra*. Put another way, when a defendant properly impleads a third party for indemnity on the plaintiff's claim, there is serious doubt about the defendant's ability to then use Rule 18 to join a claim against the third party which is not related to plaintiff's claim. *Compare United States v. United Pacific Ins. Co.*, 472 F.2d 792, 795 (9th Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973) (no ancillary jurisdiction over third party complaint unrelated to plaintiff's claim) *with Schwab v. Erie Lackawanna R. R. Co.*, 438 F.2d 62 (3d Cir. 1971) (ancillary jurisdiction over claim ancillary to proper third-party complaint). We need not reach this issue, however, because we read the district's court's opinion as limiting the scope of the removed counterclaim to a claim for damages for fraud. So limited, we can approve the district court's exercise of jurisdiction under either the pendent party rationale used below or by viewing the counterclaim as analogous to a Rule 14 impleader.

Appellant's other arguments are without merit.[7] Accordingly, the decision of the district court is

*Affirmed.*

---

6. We need not and do not reconsider the specific holding of *Bowers* in light of *Aldinger*. *Bowers* involved the use of pendent party theory in allowing *plaintiff* to join additional defendants over whom there was no independent basis of federal jurisdiction. Such procedure is not involved in this case.

7. We reject as frivolous appellant's claim that the removal petition was untimely under 28 U.S.C. § 1446(b). Although appellees had notice of the assignment of the notes to the FDIC in November 1977, the case was not "removable" within the meaning of the statute until the FDIC actually intervened in February, 1978. The petition for removal was timely filed within 30 days of the FDIC's intervention.