**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**The ROBUCK COMPANY, INC., F. L. Robuck, R. D. Robuck, and Quality Builders, Inc., Defendants.**

**Civ. A. No. 78–75.**

United States District Court, D. South Carolina, Columbia Division.

Oct. 5, 1979.

---

J. Randolph Pelzer, Pelzer & Chard, North Charleston, S. C., for plaintiff.

William H. Townsend, McKay, Sherrill, Walker & Townsend, Columbia, S. C., for defendants.

CHAPMAN, District Judge.

This matter is before the Court upon the motion of Plaintiff Federal Deposit Insurance Corporation (hereinafter referred to as "FDIC") against the Defendants the Robuck Company, Inc., F. L. Robuck, R. D. Robuck, and Quality Builders, Inc., (hereinafter referred to collectively as "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Rules provide that summary judgment is appropriate and may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

FDIC commenced this action to obtain judgment on notes executed and delivered to American Bank & Trust (hereinafter designated "AB&T"). FDIC purchased the notes from the receivership of AB&T after AB&T failed.

The first promissory note, described in the First Cause of Action of FDIC's Complaint, was executed by the Defendant The Robuck Company, Inc., in the original principal amount of $1,385,000.00, and is secured by a real estate mortgage on a partially constructed condominium project. Payment of this note is also guaranteed by the Defendants F. L. Robuck and R. D. Robuck under a guaranty agreement executed contemporaneously with the note and mortgage.

The second promissory note, described in the Second Cause of Action of FDIC's Complaint, was originally secured by a second real estate mortgage on an apartment project, but is now unsecured due to the foreclosure of the prior mortgage. This note was executed by Defendants Quality Builders, Inc. and F. L. Robuck.

Defendants in their Answer and Counterclaim admitted all material allegations in FDIC's Complaint, including personal and subject matter jurisdiction, and the execution of the subject notes, mortgage, and guaranty agreements. However, Defendants qualified certain of their admissions by two defenses of an affirmative nature and alleged that FDIC is not entitled to recover any sums from said Defendants as a result of these two defenses.

As a first affirmative defense, Defendants alleged in paragraph nine (9) of their Answer and Counterclaim that:

"the note, mortgage, and guaranty agreement were given by the respective Defendants to Plaintiff in connection with a construction loan agreement whereby Plaintiff's predecessor in interest, AB&T, agreed to fund construction of a condominium project on the real property described in paragraph 7; that during the process of construction AB&T properly funded the construction until such time as it was placed in receivership by the

South Carolina State Board of Bank Control, whereupon funding of the construction was halted causing Defendants to expend large sums of their own money in financing the on-going construction until such funds were exhausted, Defendants' credit ruined, and construction terminated, all to Defendants' damage."

Similarly, Defendants alleged in paragraph fifteen (15) of their Answer and Counterclaim pertaining to the Second Cause of Action, that:

"the said note and mortgage were given by the respective Defendants to Plaintiff in connection with a construction loan agreement whereby Plaintiff's Predecessor in interest, AB&T, agreed to fund completion of construction of an apartment project on the real property originally covered by the mortgage; that during the process of construction AB&T properly funded the construction until such time as it was placed in receivership by the South Carolina State Board of Bank Control, whereupon funding of the construction was halted causing Defendants to expend large sums of their own money in financing the on-going construction until such funds were exhausted, Defendants' credit ruined, construction terminated and the first mortgage foreclosed, all to Defendants' damage."

Additionally, styled as a further defense and counterclaim, Defendants alleged:

"that FDIC's action in failing to honor the contractual obligations of its predecessors, AB&T, in connection with the contracts which are the subject of this action, by failing and refusing to fund the on-going construction by Defendants as set out above, thereby breached its contracts with Defendants, causing Defendants to expend large sums of their own money in financing such construction until their funds were exhausted, their credit ruined, and construction terminated."

Defendants requested damages on their counterclaim. The counterclaim would appear to be based upon the same factual allegations as the first defense.

Defendants' second affirmative defense alleges that this action should be stayed indefinitely, pending the outcome of an action captioned *Federal Deposit Insurance Corporation v. American Bank Trust Shares, Inc. (ABTS), et al.*, 460 F.Supp. 549, an action in which the District Court, upon remand from the United States Court of Appeals, is considering the legality of FDIC's appointment as Receiver of AB&T.

For the reasons fully discussed below, there is no genuine issue of fact for trial, and FDIC is entitled to summary judgment as a matter of law.

Defendants raise the existence of two construction loan agreements as a defense to this action, alleging that FDIC breached these agreements once AB&T was closed on September 20, 1974, by failing to fund any further construction. However, at the deposition of F. L. Robuck, held September 11, 1978, the following exchange occurred during the questioning of Mr. Robuck by the attorney for the FDIC:

A. I don't think there was a construction loan agreement to it, was there, Bill? It was just a note and mortgage for that amount of money to complete the project. As far as a construction loan agreement, if there was such a thing, I don't know anything about an agreement, except a note and mortgage.

Q. So you have no written document which might be called a construction loan agreement?

A. Not that I know of.

Q. Or nothing similarly entitled as a construction loan agreement?

A. No, nothing but that agreement we had in working up the terms of the mortgage, etc., and what it was was for orally.

Q. Would that apply also to paragraph 15 where the construction loan agreement is referred to on the Teakwood Project?

A. Yes, as far as AB&T was concerned.

Q. Why do you qualify that, as far as AB&T was concerned?

A. They were a second lender on it. We did have a construction agreement with the first lender.

Q. Berens?

A. Right.

Q. You had no such similar agreement with AB&T?

A. They had no contractual forms that I know of.

FDIC has submitted an affidavit which indicates that employees of FDIC have reviewed the files of AB&T and the files did not contain any construction loan agreement nor any evidence of or reference to any agreed procedure for disbursing proceeds of loans.

Although genuine issues of fact may exist as to whether there was an oral agreement and the terms of the oral agreement, there appears to be no genuine issue of material fact because the agreements were indisputably oral. Any alleged construction agreement, to the extent that it is oral only, is wholly unenforceable against FDIC, pursuant to the terms of 12 U.S.C. § 1823(e) and a long line of cases decided thereunder. The statute was enacted to protect the FDIC for oral agreements between the failed bank and a debtor. This statute provides in pertinent part as follows:

No agreement which tends to diminish or defeat the right, title or interest of the corporation in any asset acquired by it under this action, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank (3) shall have been approved by the Board of Directors of the bank or its Loan Committee and (4) shall have been continuously, from the time of its execution, an official record of the bank.

The FDIC's rights under § 1823(e) were upheld in *FDIC v. Vogel,* 437 F.Supp. 660 (E.D.Wis.1977), which is on all fours with this action. In that case, a failed bank had made a loan to a development company, and after the bank failed certain of its assets were sold to the FDIC in a purchase and assumption transaction similar to the one utilized by the FDIC in connection with the failure of AB&T. When payment was refused, the FDIC brought suit against two individual guarantors, but they claimed that their guaranty was unenforceable because the bank had failed to honor its commitment to make a further loan. Despite the fact that there were "obvious issues of fact" relating to whether the bank had in fact committed to make further loans, the district court found that it was undisputed that the alleged commitment did not meet the requirements of § 1823(e), and granted summary judgment in favor of the FDIC. In doing so, the Court rejected the contention that the FDIC was a successor in interest to the closed bank and therefore subject to defenses the debtor could raise against the closed bank:

"Once the FDIC, acting in its corporate capacity, purchases the assets of the closed bank, it is simply not a successor in interest to the closed bank. Section 1823(e) provides it with more protection than the bank or its receiver." *Id.* at 663.

Moreover, the district court held that the FDIC had greater rights in the instrument it acquired than either the failed bank, or its receiver:

"The defendants have also argued that the FDIC cannot acquire more rights by purchasing the assets than it holds as receiver. This argument directly contradicts the express terms of the statute as discussed above. The FDIC, as receiver of a closed bank, does not have available to it the protection provided in the last paragraph of § 1823(e). Congress expressly gave this protection to the FDIC when, acting in its corporate capacity, it expends funds to purchase assets. Congress was well aware that the sale may be conducted by the FDIC as receiver on the one hand and the FDIC in its corporate capacity on the other. This Court cannot, by judicial fiat, repeal § 1823(e) in all cases when the FDIC acts as the receiver of the closed bank." *Id.* at 664.

The defendants in *Vogel* had also asserted a set-off and counterclaim against the

FDIC arising out of their dealings with the failed bank, but the district court dismissed it:

"The set-off and counterclaim alleged by the defendants must also be dismissed. Any action arising out of a breach of contract by American City Bank must be alleged against the bank's receiver, not against the plaintiff herein. The FDIC, in its corporate capacity, is not liable for any damages accruing in this respect to the defendants. If damages are owing, they must be paid out of the funds accruing to FDIC as the receiver of the bank, not out of the public funds entrusted to the FDIC in its corporate capacity." *Id.* at 665.

Having discussed the applicable law, this Court makes the following findings of fact and additional conclusions of law:

## FINDINGS OF FACT

1. This action was commenced by the filing of a Summons and Complaint on January 16, 1978, and an Answer and Counterclaim was filed on behalf of all Defendants on February 3, 1978.

2. As appears from the Complaint filed by the FDIC, this action was commenced for the purpose of obtaining judgment upon two promissory notes and the foreclosure of a mortgage which secured one of the notes. The FDIC has requested a deficiency judgment after application of the proceeds of sale of the mortgaged property to the indebtedness secured thereby.

3. As appears from the Affidavit of R. David Chard, a notice of lis pendens was filed on or about December 28, 1977, by the attorney for the Plaintiff in the Office of the Clerk of Court for Richland County, in accordance with South Carolina Law.

4. Plaintiff, Federal Deposit Insurance Corporation is an agency of the United States organized and existing under the laws of the United States.

5. The Defendant F. L. Robuck is a resident of the County of Richland, State of South Carolina.

6. The Defendant R. D. Robuck is a resident of the State of North Carolina.

7. The Defendants Quality Builders, Inc., and The Robuck Company, Inc., are corporations organized and existing under the laws of the State of South Carolina, doing business in the County of Richland.

8. On or about July 19, 1974, The Robuck Company, Inc., executed and delivered unto Plaintiff's predecessor in interest, American Bank & Trust, its certain promissory note in the original principal amount of One Million, Three Hundred Eighty-five Thousand and no/100ths Dollars ($1,385,000.00) together with interest, all costs of collection, and an attorney's fee.

9. In order to secure its indebtedness to Plaintiff's predecessor in title, The Robuck Company, Inc., executed and delivered to AB&T a certain mortgage dated July 19, 1974, and recorded on July 19, 1974, in the Office of the R.M.C. for Richland County in Mortgage Book M–356 at page 649, whereby it mortgaged to AB&T the property described below.

### PARCEL "A"

ALL that certain piece, parcel or tract of land situate, lying and being on the southwestern side of Piney Grove Road, near the City of Columbia, in the County of Richland, State of South Carolina, containing 1.55 acres, and being more fully shown and delineated on plat thereof prepared for Quality Builders, Inc. by Palmetto Engineering Company, dated April 11, 1973, recorded in the Office of the R.M.C. for Richland County in Plat Book "X" at page 2294, and having such boundaries and measurements as will more fully appear by reference to said plat;

### PARCEL "B"

ALL that certain piece, parcel or tract of land situate, lying and being on the southwestern side of Piney Grove Road, near the City of Columbia, in the County of Richland, State of South Carolina, containing 2.09 acres, and being more fully shown and delineated on plat thereof prepared for Quality Builders, Inc. by Pal-

metto Engineering Company, dated April 25, 1973, recorded in the Office of the R.M.C. for Richland County in Plat Book "X" at page 2307, and having such boundaries and measurements as will more fully appear by reference to said plat;

### ALSO

ALL that certain piece, parcel or tract of land situate, lying and being southwest of Piney Grove Road, near the City of Columbia, in the County of Richland, State of South Carolina, containing 10.55 acres, and being more fully shown and delineated on plat thereof prepared for Real Estate Developers, Incorporated by Palmetto Engineering Company, dated April 27, 1973, recorded in the Office of the R.M.C. for Richland County in Plat Book "X" at page 2308, and having such boundaries and measurements as will more fully appear by reference to said plat.

10. Plaintiff purchased the above note and mortgage from the receivership of AB&T.

11. The note provided that a reasonable counsel's fee in the amount of ten (10%) percent shall be paid to the attorneys for the holder of the note and mortgage in the event of foreclosure of the mortgage.

12. The mortgagor has defaulted upon the payments called for in said note and mortgage.

13. There is now due and owing on the aforesaid note the principal sum of Eight Hundred Three Thousand Five Hundred Eighty-six and 01/100ths Dollars ($803,-586.01), plus accrued interest as of August 31, 1979, in the sum of Four Hundred Ninety-two Thousand Five Hundred Sixty and 67/100ths Dollars ($492,560.67). Interest accrues on this sum at the rate of Two Hundred Sixty-four and 19/100ths Dollars ($264.19) per day from August 31, 1979, to the date of judgment. There is further due and owing the sum of Twenty-three Thousand Eighty-one and 85/100ths Dollars ($23,081.85), which sum is the total amount advanced by Plaintiff for real estate taxes, hazard insurance, and for protection of the mortgaged premises, which sum is in addition to the amount owed Plaintiff and secured by said real estate mortgage.

14. The Defendants F. L. Robuck and R. D. Robuck have guaranteed payment of the indebtedness of The Robuck Company, Inc., to the extent of One Million Three Hundred Eighty-five Thousand and no/100ths Dollars ($1,385.00).

15. Plaintiff purchased the said Guaranty Agreement from the receivership of AB&T.

16. On or about July 19, 1974, the Defendants Quality Builders, Inc., and F. L. Robuck executed and delivered unto Plaintiff's predecessor in interest, AB&T, their promissory note in the original principal amount of One Million Two Hundred Thousand and no/100ths Dollars ($1,200,000.00), together with interest, all costs of collection, and a reasonable attorney's fee.

17. The $1,200,000.00 note was originally secured by a second real estate mortgage on certain real property located in Richland County, but is now unsecured due to a foreclosure by a prior mortgagee.

18. Plaintiff purchased the above note from the receivership of AB&T.

19. There is now due and owing on the aforesaid note the principal sum of Five Hundred Eighty Thousand Three Hundred Seventy-three and 26/100ths Dollars ($580,-373.26), plus accrued interest as of August 31, 1979, in the sum of Three Hundred Fifty-three Thousand Seven Hundred Eleven and 71/100ths Dollars ($353,711.71). Interest accrues on this sum at the rate of One Hundred Ninety and 81/100ths Dollars ($190.81) per day from August 31, 1979, to the date of judgment.

20. The agreement which Defendants allege as the basis for their defense and counterclaim was admittedly oral. The records of American Bank & Trust contain no evidence of or reference to any construction loan agreement of any nature, nor any documents pertaining to the method of disbursing the proceeds from the loans subject to this action.

## CONCLUSIONS OF LAW

21. This Court has jurisdiction of the subject matter and of the parties to this action.

22. The oral agreements alleged by the Defendants in their Answer and Counterclaim are invalid against the FDIC under 12 U.S.C. § 1823(e), for the reasons previously stated.

23. FDIC is entitled to judgment as there exist no genuine issue of material fact in this action and FDIC is entitled to judgment as a matter of law.

NOW THEREFORE, it is ORDERED, ADJUDGED and DECREED as follows:

A. That the Plaintiff FDIC have judgment against the Defendants The Robuck Company, Inc., F. L. Robuck, and R. D. Robuck in the First Cause of Action in the following amounts:

| | |
|---|---|
| Principal | $ 803,586.01 |
| Interest as of 8/31/79 | 492,560.67 |
| Advances | 23,081.85 |
| TOTAL as of 8/31/79 | $1,319,228.53 |
| Per diem after 8/31/79 | $ 264.19 |

That Plaintiff further have judgment for all costs of this collection, including a reasonable attorney's fee in the amount of $3,000.00.

B. That the Plaintiff FDIC have judgment against the Defendants Quality Builders, Inc., and F. L. Robuck in the Second Cause of Action in the following amounts:

| | |
|---|---|
| Principal | $580,373.26 |
| Interest as of 8/31/79 | 353,711.71 |
| TOTAL as of 8/31/79 | $934,084.97 |
| Per diem after 8/31/79 | $ 190.81 |

That Plaintiff further have judgment for all costs of this collection, including a reasonable attorney's fee in the amount of $2,000.00.

C. That the Plaintiff shall have judgment of foreclosure of the mortgaged property described in paragraph 9 above, and said Defendants, and all persons claiming by, through or under them are hereby barred from all right, title, interest and equity of redemption in and to the mortgaged properties hereinabove described, or to any part thereof.

D. That the United States Marshal or his duly authorized Deputy, after having advertised for sale the mortgaged property once a week for four weeks prior to sale as required by 28 U.S.C. § 2002, shall sell the mortgaged property hereinabove described at public auction before the door of the Richland County Courthouse, or such other place of sale as may be customary, at the usual hour of sale.

E. That in conducting the sale as outlined above, the United States Marshal or his duly authorized Deputy shall offer the mortgaged property hereinabove described for sale, and the highest bid received shall be accepted. The highest bidder, other than the Plaintiff, shall be required to make a deposit of five (5%) percent of the bid as earnest money and as evidence of good faith and the balance of the bid shall be due within ten (10) days. If the Plaintiff is the successful bidder at the sale, the amount due on its mortgage may be used as the equivalent of cash. Should the person or persons making the highest bid at the sale fail to comply with the terms of his bid then the selling officer shall readvertise and resell the property on the same terms on a subsequent date at the risk of said bidder.

F. Since the Plaintiff FDIC is seeking a judgment for any deficiency remaining after foreclosure, the bidding will remain open for thirty (30) days, as required by law.

G. That upon full compliance with the terms of the sale, the United States Marshal shall convey title in fee simple to the purchaser or purchasers or their respective nominees. The purchaser or purchasers shall be let into possession of the property upon production of the deed or deeds from the United States Marshal, and all persons holding adversely to the purchaser shall be ejected from the property by the United Stated Marshal.

H. The proceeds of the sale shall be applied first to the costs and disbursements of this action, the expenses of the sale, and the payment of any taxes when due and constituting a lien upon the mortgaged

property. The proceeds of sale shall then be applied to the payment and discharge of the amount herein found owing to the Plaintiff FDIC in the First Cause of Action. Should any of the proceeds thereafter remain, the balance shall be held subject to the further order of this Court.