FEDERAL DEPOSIT INSURANCE COR-
PORATION, in its Corporate Capacity
as Assignee of the Receiver of the At-
lantic National Bank, Norfolk, Virgi-
nia, Plaintiff,

v.

Salvage DeLacy STITH and
Leah Stith, Defendants.

Civ. A. No. 90–1477–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 16, 1991.

Henry C. Morgan, Jr., Pender & Coward,
Virginia Beach, Va., for plaintiff.

Salvage DeLacy Stith, Portsmouth, Va.,
pro se.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District
Judge.

This matter comes before the court for
decision following a bench trial. Plaintiff
Federal Deposit Insurance Corporation, in
its corporate capacity ("plaintiff FDIC cor-
porate"), brought this action pursuant to 12
U.S.C. § 1819(b)(2)(A) to enforce a promis-
sory note against defendant Salvage DeLa-
cy Stith ("Stith") and a deed of trust
against the property of defendants Stith
and Leah Stith.

### I.  Facts

Defendant Stith was employed as an As-
set Recovery Specialist by Atlantic Nation-
al Bank, Norfolk, Virginia ("Atlantic Na-
tional Bank") from March, 1988, until Sep-
tember, 1988.  His supervisor was Herbert
L. Boone, Senior Lender.  *See* Plaintiff's
Rebuttal Exhibit 2;  Plaintiff's Exhibit 3
(hereinafter "Exhibit" to be referred to as
"Ex.").

In May of 1988, defendant Stith sought personally to secure a loan from Atlantic National Bank primarily to assist another individual, Edward Delk. It was defendant Stith's intention that proceeds of the loan would be applied to the account of Edward Delk at Atlantic National Bank to forestall an otherwise imminent foreclosure on Edward Delk's home.[1]

On May 19, 1988, defendant Stith executed in favor of Atlantic National Bank a promissory note in the amount of $30,000 plus interest, of which $25,000 was to be applied to Edward Delk's account. *See* Plaintiff's Ex. 1; Excerpt of Proceedings at 2, 4 (Feb. 20 and 21, 1991).[2] As security for the debt evidenced by said promissory note, defendants Stith and Leah Stith, also on May 19, 1988, executed a deed of trust on property in Greensville County, Virginia. *See* Plaintiff's Ex. 2.[3] Both the promissory note and the deed of trust were prepared by defendant Stith as an employee of Atlantic National Bank. Furthermore, defendant Stith, himself, or an agent on his behalf, recorded the deed of trust with the Clerk of the Circuit Court of Greensville County on May 31, 1988. *See id.* (official receipt of recordation); Excerpt of Proceedings at 32, 38, 45 (Feb. 20 and 21, 1991).

The terms of the promissory note obligated defendant Stith to make thirty-five (35) monthly payments of $498.03 commencing on June 19, 1988, and one (1) final balloon payment of $20,434.88. Plaintiff's Ex. 1. No payments ever have been made on the note, which was not funded at the time of the transaction. As a bank employee, defendant Stith was familiar with the task of booking a loan, and he knew that his loan was not funded, i.e. booked, on May 19, 1988, or anytime shortly thereafter.[4]

On or about October 26, 1988, defendant Stith, citing his financial situation and the fact that the funds had not been disbursed, requested the assistance of the president of Atlantic National Bank, Levi E. Willis, in securing a release of the $30,000 deed of trust. Plaintiff's Ex. 5. No release was secured, and on November 4, 1988, $25,000 was credited to the account of Edward Delk at Atlantic National Bank. *See* Plaintiff's Ex. 11 at 7.[5]

In early 1989, defendants Stith and Leah Stith filed suit against Atlantic National Bank in the Circuit Court of the County of Greensville seeking, in part, the court to marginally release the deed of trust executed on May 19, 1988. *See* Plaintiff's Ex. 12.[6] Subsequent to filing suit, defendant

---

1. At trial, defendant Stith unequivocally testified that he obtained the loan for the benefit of his friend, Edward Delk, and with . the understanding that the money would be applied directly to the account of Edward Delk at Atlantic National Bank to prevent foreclosure of Delk's home. Excerpt of Proceedings at 1, 4, 6, 8, 31, 34, 36, 38, 40, 43, 51 (Feb. 20 and 21, 1991).

2. The remaining $5,000 was to be applied to a "charged-off" foreclosed loan of defendant Stith at Atlantic National Bank. *See* Excerpt of Proceedings at 2, 4 (Feb. 20 and 21, 1991). The $5,000 apparently was never credited or disbursed to defendant Stith. *See* Plaintiff's Ex. 10; Excerpt of Proceedings at 3–4 (Feb. 21, 1991); *infra* note 15.

3. The property securing the debt is identified in the deed of trust as 2.08 acres lying in the Belfield Magisterial District of Greensville County, Virginia. Plaintiff's Ex. 2.

4. Defendant Stith testified that two days after the deed of trust was recorded, Rick Spillberg, a representative of the Office of the Comptroller of the Currency, told him not to do anything

else on the loan because it should not be done. Excerpt of Proceedings at 32, 81 (Feb. 20 and 21, 1991). In addition, defendant Stith testified:

> I was familiar with what had to be done to book a loan. I knew this loan was not and should not have ever been booked, because it did not comply with the banking practices which the bank was supposed to follow, and I was told specifically by Herbert Boone that it was not booked.

*Id.* at 39. Herbert L. Boone was defendant Stith's supervisor, *see supra* at 1, and was the loan officer (Senior Lender) responsible for presenting the loan to the Executive Loan Committee of Atlantic National Bank for approval on June 17, 1988. *See* Plaintiff's Ex. 3.

5. The sum of $25,000 actually was first credited to Edward Delk's account on November 1, 1988, but that credit was reversed that same day. *See* Plaintiff's Ex. 11 at 7. The $25,000 then was recredited on November 4, 1988. *See id.*

6. Defendant Stith testified that this suit was pending as early as January or February of 1989. Excerpt of Proceedings at 83 (Feb. 20 and

Stith acknowledged in writing his obligation to Atlantic National Bank, but sought to restructure the terms of the loan. Plaintiff's Ex. 6; Plaintiff's Rebuttal Ex. 1; *see* Plaintiff's Ex. 7. The loan never was restructured.

On December 7, 1989, Atlantic National Bank was declared insolvent and, pursuant to 12 U.S.C. §§ 191 and 1821(c), the FDIC was appointed receiver ("FDIC receiver"). Upon accepting its appointment as receiver of Atlantic National Bank, FDIC receiver entered into a purchase and assumption transaction and, pursuant thereto, executed a contract of sale with plaintiff FDIC corporate through which plaintiff FDIC corporate was assigned, among other assets, the aforementioned promissory note and deed of trust.[7]

Plaintiff FDIC corporate, on July 20, 1990, filed suit in this court to enforce the aforementioned promissory note and deed of trust. The case proceeded to trial. Based upon the trial testimony and documents introduced into evidence, the court found as a fact that the promissory note was partially funded on November 4, 1988, when $25,000 was credited directly to the account of Edward Delk.[8]

After hearing final argument the court decided, for the reasons stated in the record, all but one of the issues which the parties wished further to brief. The matter is now ripe for decision. The sole issue remaining for the court to decide is whether plaintiff FDIC corporate is foreclosed from enforcing the promissory note and deed of trust because there was a failure of consideration.[9]

Defendants argue that the failure of consideration, namely the failure of Atlantic National Bank fully to fund the transaction on May 19, 1988, prevents plaintiff FDIC corporate from enforcing the promissory note and deed of trust at issue. *See* Defendants' Letter of Memorandum (Apr. 17, 1991). Plaintiff FDIC corporate, however, argues that it occupies a preferred position under the law, and because of this preferred position it is entitled to collect on the face of the promissory note and enforce the deed of trust.

## II. Legal Analysis

In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the FDIC had acquired a note in a purchase and assumption transaction and the maker

---

21, 1991). The suit was still pending when the bank went into receivership.

**7.** As an insurer of bank deposits, one of the FDIC's primary duties is to pay depositors of a failed bank. *NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488, 1496 (5th Cir.1990); *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The FDIC has two methods of accomplishing this duty: liquidate the assets of the bank and then pay the depositors their insured amounts, up to a maximum of $100,000 per depositor under 12 U.S.C. § 1821(a)(1), covering any shortfall with insurance funds; or utilize a purchase and assumption transaction. *Gunter,* 674 F.2d at 865. The liquidation option is simpler but, as courts have recognized, suffers the disadvantages of destroying confidence in the banking system and causing depositors to wait long periods to recover their funds. *E.g., id.* Although the preferred method, the purchase and assumption approach is more difficult. A purchase and assumption transaction results in another bank purchasing the failed bank and reopening it without interruption to the banking operations and without loss to depositors.

A purchase and assumption agreement involves three parties: the receiver of the failed bank, the purchasing bank, and the FDIC, in its corporate capacity, as insurer. The FDIC, as in the present case, often is appointed receiver. Once the FDIC is appointed receiver and decides to execute a purchase and assumption transaction, it sells the high quality assets to a purchasing bank. The remaining assets, which are not accepted by the purchasing bank, then are sold by the FDIC, as receiver, to the FDIC in its corporate capacity. These "unacceptable" assets often include loans past due, which the FDIC in its corporate capacity then tries to collect. *See generally id.* (describing purchase and assumption transaction).

**8.** The court notes that notwithstanding the passage of five and one-half months between the date the promissory note and deed of trust were executed and the date the funds were credited, defendants were not deprived of the benefit of their bargain: Atlantic National Bank never foreclosed on the home of Edward Delk. *See* Excerpt of Proceedings at 51 (Feb. 20 and 21, 1991); *infra* note 15.

**9.** *See Neely v. White,* 177 Va. 358, 366–67, 14 S.E.2d 337, 341 (1941); BLACK'S LAW DICTIONARY 594 (6th ed. 1990).

asserted the defense of failure of consideration based upon an undisclosed agreement, between the maker and the failed bank, that the note would not be collected. The Supreme Court held that such a "secret agreement" could not be used as a defense against the FDIC because of the actual or potential deceit to banking authorities. *Id.* at 460, 62 S.Ct. at 680–81. Accordingly, the Court set forth a common law rule of estoppel that bars defenses against the FDIC based upon secret or unrecorded collateral agreements, written or oral, that alter the terms of a facially unqualified obligation, regardless of the borrower's intent, if the borrower lent himself to a scheme likely to mislead authorities. *See, e.g., Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1248 (5th Cir.1990) (citing *Bell & Murphy and Assocs. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 753 (5th Cir.1990)); *cf. FDIC v. R–C Marketing and Leasing, Inc.*, 714 F.Supp. 1535, 1544 (D.Minn.1989) (citing *FDIC v. Timbalier Towing Co.*, 497 F.Supp. 912,

920–21 (N.D.Ohio 1980)) (notwithstanding absence of a secret collateral agreement, *D'Oench* doctrine still may bar failure of consideration defense). In 1950, the *D'Oench* doctrine was codified, in part, by Congress in 12 U.S.C. § 1823(e), *amended by* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 217, 103 Stat. 183, 256 (1989).[10]

Although the *D'Oench* doctrine and 12 U.S.C. § 1823(e) do not, as a matter of law, bar the maker of a promissory note from asserting against the FDIC the defense of failure of consideration in every case, important inquiries in applying this doctrine and statute are: 1) whether the defense of failure of consideration sought to be interposed against the FDIC arises from a secret collateral agreement; and 2) whether the maker "contributed" to the overstatement of the bank's assets which the FDIC seeks to enforce.[11]

---

10. Title 12 U.S.C. § 1823(e) provides that:

No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
1) is in writing,
2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
4) has been, continuously, from the time of its execution, an official record of the depository institution.

This version of 12 U.S.C. § 1823(e) was enacted on August 9, 1989. The FDIC was appointed receiver of Atlantic National Bank on December 7, 1989. The only significant difference between this version and its predecessor is that Congress amended the statute to apply explicitly to the FDIC as receiver of any insured depository institution. This August 9, 1989, amendment has no effect on the instant case, since the instant case involves the FDIC in its corporate capacity.

Further, although the language of 12 U.S.C. § 1823(e) limits its application to "agreements," the Supreme Court has made clear that the term

"agreement" as used therein is to be given a broad interpretation, covering more than promises to perform acts in the future. *See Langley v. FDIC*, 484 U.S. 86, 92–93, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987).

11. *See, e.g., FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986) (*D'Oench* doctrine estopped maker of promissory note from asserting failure of consideration defense against FDIC as receiver when maker contributed to overstatement by signing a blank promissory note with the understanding that the terms would be filled in later); *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981) (failure of consideration defense asserted against FDIC when defense arose not from secret collateral agreement but from face of assets themselves which manifested the bilateral obligations thereunder); *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974) (failure of consideration defense not barred when FDIC as receiver brought suit and maker of promissory note was "wholly innocent" of wrongful action taken by bank and was without knowledge of failure of consideration until after bank was closed); *R–C Marketing and Leasing, Inc.*, 714 F.Supp. at 1544 (maker's acquiescence in overstatement of bank's assets bars assertion of failure of consideration defense under *D'Oench*); *Timbalier Towing Co.*, 497 F.Supp. at 920–21 (*D'Oench* applies to bar failure of consideration defense when maker of note makes deceptive scheme possible through action or inaction); *Riverside Park Realty Co. v. FDIC*, 465 F.Supp. 305 (M.D.Tenn.1978) (breach of contract defense as-

In making these inquiries in the instant case, it is clear that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) bar defendants from asserting the defense of failure of consideration. The promissory note and deed of trust at issue are facially unqualified obligations. The alleged failure of consideration arises from "secret" collateral agreements, and defendant Stith contributed to a scheme that was likely to mislead banking authorities.

Specifically, defendant Stith served in two roles with respect to the loan transaction at issue. He was the bank officer who prepared and recorded the commercial paper, and he was the borrower. Defendant Stith undertook to close his own loan, both as bank officer and borrower. Therefore, the decisions made by defendant Stith while he acted in these dual capacities constituted an agreement between the borrower and the bank. Defendant Stith was familiar with the task of booking a loan and yet he did not book his own loan nor have it booked, and he knew that it had not been booked. The failure to book the loan on May 19, 1988, constituted an unwritten agreement between Atlantic National Bank and the borrower not to fund the loan. This collateral, unwritten agreement, when asserted and established, alters the terms of a facially unqualified obligation. Moreover, notwithstanding that he prepared, executed, and recorded the documents in question, defendant Stith testified that the loan never should have been booked and that two days after the deed of trust was recorded, Rick Spillberg, a representative of the Office of the Comptroller of the Currency, told him not to do anything else on the loan because it should not be done. Defendant Stith himself was an Asset Recovery Specialist for Atlantic National Bank.

Even in the absence of a secret collateral agreement, courts have held that the *D'Oench* doctrine is applicable to bar the defense of failure of consideration when the maker's action or acquiescence contributes to the overstatement of the bank's assets which the FDIC seeks to enforce. *See, e.g., R–C Marketing and Leasing, Inc.*, 714 F.Supp. at 1544; *Timbalier Towing Co.*, 497 F.Supp. at 920–21. The rationale for such decisions is that by acting or failing to act one may lend himself to the type of scheme the *D'Oench* doctrine is designed to avoid. The instant case falls squarely within this rationale.

Defendant Stith lent himself and, indeed, contributed to such a scheme that was likely to mislead the banking authorities, and, in fact, may have breached the duty he owed to Atlantic National Bank as an employee by not booking the loan on May 19, 1988. One who undertakes the task of closing a loan on behalf of a bank as a "servant" thereof owes a duty to the bank to perform that task "honestly, and to do nothing injurious to his employer's interest...." *Hartford Accident and Indem. Co. v. Cox*, No. 87–456–N, slip op. at 4, 1988 WL 241123 (E.D.Va. June 30, 1988), *aff'd per curiam*, 870 F.2d 654 (4th Cir. 1989). Defendant Stith, by preparing, executing, and recording the promissory note and deed of trust at issue on behalf of Atlantic National Bank, was in a position to see that the loan transaction was properly funded and closed. He failed to do so. Furthermore, after preparing, executing, and recording the instruments in question; knowing that the loan had not and probably should not be funded; and being an Asset Recovery Specialist for the Bank, defendant Stith did nothing to keep these unfunded documents from remaining in the bank's records as facially legitimate assets for more than five months before seeking in writing a release from the lien evidenced thereby. He then later agreed in writing that he owed the debt[12] and sought a release of the deed of trust.

---

serted against FDIC when the terms diminishing the rights appeared in writing on the face of the agreements being enforced).

**12.** Defendant Stith acknowledged owing $25,000 in this letter, but sought to restructure the transaction. *See* Plaintiff's Ex. 6. This letter, and the resulting response from the bank, *see* Plaintiff's Ex. 7, had it been accepted by defendants, may have constituted yet another collateral agreement to alter the terms of the otherwise facially unqualified obligations in the promissory note and deed of trust of May 19, 1988, in

Based on the evidence adduced at trial which showed defendant Stith's direct involvement in the actions and agreements likely to mislead the banking authorities,[13] the court finds that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) bar the defendants from asserting against plaintiff FDIC corporate the defense of failure of consideration.[14] Therefore, plaintiff FDIC corporate is entitled to collect the face value of the promissory note executed by defendant Stith on May 19, 1988, and to enforce the deed of trust executed by defendants Stith and Leah Stith on the same date as security for the note.

### III. Conclusion

For the foregoing reasons, defendant Stith is liable on the promissory note for $30,000, plus the note rate of interest of ten per cent (10%) per year from May 19, 1988, until judgment is entered thereon, and the deed of trust is valid and enforceable as security for the payment thereof.[15] Plaintiff FDIC corporate also is entitled to interest at the judgment rate from the date judgment is entered and costs, including "reasonable attorneys' fees," as provided in the promissory note.[16]

The Clerk shall so enter judgment in favor of plaintiff FDIC corporate. It is so ORDERED.

---

violation of the *D'Oench* doctrine and the requirements of 12 U.S.C. § 1823(e). However, the terms of the restructure were never accepted by defendants nor consummated in any way by the parties.

**13.** The court does not find any fraudulent conduct on the part of defendant Stith, and plaintiff abandoned its allegations of fraud.

**14.** Given this outcome, the court need not address whether plaintiff FDIC corporate occupied the position of a federal holder in due course. *See, e.g., Campbell Leasing, Inc.,* 901 F.2d at 1248–50; *FDIC v. Wood,* 758 F.2d 156 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985) (cases discussing federal holder in due course doctrine). The federal holder in due course doctrine was not asserted or argued by either party in this case, nor has it been addressed by this circuit.

**15.** The court is aware that plaintiff in its memorandum of April 22, 1991, requested as relief $25,000 plus interest from November 4, 1988. Memorandum in Response to Defendant's Letter of April 15, 1991, at 1 (Apr. 22, 1991). A memorandum is not a pleading and, as such, the court does not find this memorandum to have amended the pleading in which plaintiff requested the relief granted. *See* Complaint (July 20, 1990). Furthermore, as discussed in this opinion, the law requires this result, as harsh as it may be.

Finally, the court notes that even if defendants were permitted to assert the defense of failure of consideration, this defense, if successfully demonstrated, would not have discharged completely defendant Stith from his obligations under the promissory note. Rescission of a contract is proper only when the failure of consideration defeats the purpose or goes to the root of the contract. *See Sternheimer v. Sternheimer,* 208 Va. 89, 97–98, 155 S.E.2d 41, 47 (1967); *Bolling v. King Theatres, Inc.,* 185 Va. 991, 997, 41 S.E.2d 59, 62 (1947); *Neely,* 177 Va. at 366–67, 14 S.E.2d at 341. The primary purpose of the loan—the prevention of the foreclosure on the home of Edward Delk—was accomplished, notwithstanding the alleged failure of consideration. *See supra* notes 1 & 8 and accompanying text. Atlantic National Bank never foreclosed on Delk's home. Consequently, if successfully demonstrated, the defense of failure of consideration in the instant case would have served only to reduce defendant Stith's obligation *pro tanto* by $5,000, the amount which was never credited or disbursed to him. *See* Va.Code Ann. § 8.3–408; *Neely,* 177 Va. at 367, 14 S.E.2d at 341; *supra* note 2 and accompanying text.

**16.** If the parties cannot agree on the amount of the "reasonable attorneys' fees," the matter shall be submitted to the court for determination.